**POOR QUALITY ORIGINAL**

90

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the

Wayne X, Tripp
_____
*Petitioner*

v.

_____
*Respondent*
*(name of warden or authorized person having custody of petitioner)*

Case: **2:25–cv–10626**
Assigned To : **Leitman, Matthew F.**
Referral Judge: **Ivy, Curtis, Jr**
Assign. Date : **3/4/2025**
Description: **HC TRIPP V. RARDIN (AB)**

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a) Your full name: Wayne A. Tripp
    (b) Other names you have used: N/A

2.  Place of confinement:
    (a) Name of institution: Milan Federal Correctional Institution
    (b) Address: P.O. Box 1000
    Milan, Michigan 48160
    (c) Your identification number: 24778-509

3.  Are you currently being held on orders by:
    ☒ Federal authorities   ☐ State authorities   ☐ Other - explain:
    _____

4.  Are you currently:
    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
    If you are currently serving a sentence, provide:
    (a) Name and location of court that sentenced you: Western District of Missouri
    _____
    (b) Docket number of criminal case: 21-CR-LLOO3
    (c) Date of sentencing: 8-23-2023
    ☐ Being held on an immigration charge
    ☐ Other *(explain):* N/A
    _____
    _____
    _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.   What are you challenging in this petition:

☑ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other *(explain):*   _See Exhibits that were filed_

6.   Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court:   _See exhibits_

(b) Docket number, case number, or opinion number:   _None_

(c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed):*

_N/A_

(d) Date of the decision or action:   _8.23.2023_

## Your Earlier Challenges of the Decision or Action

7.   First appeal

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☑ Yes           ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:   _See Exhibits_

(2) Date of filing:

(3) Docket number, case number, or opinion number:

(4) Result:

(5) Date of result:

(6) Issues raised:

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____

(b) If you answered "No," explain why you did not appeal: _____
_____

8. **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☑ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: _____

(2) Date of filing: _____

(3) Docket number, case number, or opinion number: _____

(4) Result: _____ *See  Exhibits* _____

(5) Date of result: _____ " _____ " _____

(6) Issues raised: _____ " _____ ". _____

_____ *See    Exhibits* _____
_____
_____
_____
_____

(b) If you answered "No," explain why you did not file a second appeal: *See  Exhibits*
_____

9. **Third appeal**          *See    Exhibits*

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☑ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: *See  Exhibits*
_____

(2) Date of filing: _____

(3) Docket number, case number, or opinion number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____
_____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

*See attached exhibits*

(b) If you answered "No," explain why you did not file a third appeal: _____

10.    **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes          ☑ No

If "Yes," answer the following:

(a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes          ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(b)    Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes          ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:

N/A

11. Appeals of immigration proceedings

Does this case concern immigration proceedings?

☐ Yes          ☐ No

If "Yes," provide:

(a) Date you were taken into immigration custody:          N/A

(b) Date of the removal or reinstatement order:

(c) Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No

If "Yes," provide:

(1) Date of filing:

(2) Case number:

(3) Result:

(4) Date of result:

(5) Issues raised:

(d) Did you appeal the decision to the United States Court of Appeals?

☐ Yes          ☐ No

If "Yes," provide:

(1) Name of court:          N/A

(2) Date of filing:

(3) Case number:

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

_____

_____

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes                    ☐ No

If "Yes," provide:

(a)  Kind of petition, motion, or application: _____

(b)  Name of the authority, agency, or court: _____

(c)  Date of filing: _____

(d)  Docket number, case number, or opinion number: _____

(e)  Result: _____

(f)  Date of result: _____

(g)  Issues raised: _____

_____

_____

_____

_____

_____

_____

**Grounds for Your Challenge in This Petition**

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: _____

_____

_____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground One in all appeals that were available to you?

☐ Yes                    ☐ No

**GROUND TWO:** _____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Two in all appeals that were available to you?

☐ Yes                    ☐ No

**GROUND THREE:** _____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Three in all appeals that were available to you?

☐ Yes                    ☐ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes              ☐ No

14.   If there are any grounds that you did not present in all appeals that were available to you, explain why you did
      not: _____

_____

_____

_____

## Request for Relief

15.  State exactly what you want the court to do: See Sentencing transcripts
and Grievances Previously filed and Place me at
medical facilitie within (500) miles within where I
were Sentenced that I could get the level of Care" or"
be Sent home Confinement So I could get the level of Care
from home.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

_____

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: *2·26·2025*

*Wayne A. Tripp*
_____
Signature of Petitioner


_____
Signature of Attorney or other authorized person, if any

BP 8s and associated documents.

June 17, 2024

I am resubmitting the appeal enclosed wheras it states wardens response. based on information recieved that was sent bye appealote attorney Ms. Celesete Johns in Missouri who told me that when the warden from this facilitie responded which I enclosed the information to be sent to her which she'd relay it towards the Grand Prarie Region Transfer Coordinator whom she said she'd been in touch with regarding the Proper Protocol, Policies which I complied with in attempting to be placed at facilitie where the level of care recommended by the court be obtained, which this facilitie is not the Medical facilitie as recommended See transcripts

W.A. Tripp #24778509
U.S.P - Marion

My attorney Ms Cardarella, and federal defense attorney Ms. Laine Cardarella, who may have addressed this issue already since the inception of me being Placed at this facilitie.

I will be contacting both of them regarding the legal barriers which prevents me from being placed at Springfield medical facilitie as Ms Johns told me September 8th 2023 I'd be.

— Court transcripts — Pg. 41

# See Pg 3 7 thru 14

— B.O.P. designation Policies / Medical

#

1

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF MISSOURI
 2

 3   UNITED STATES OF AMERICA,

 4           Plaintiff,              Docket No. 4:21-cr-00003

 5      v.

 6   WAYNE A. TRIPP,                 Kansas City, Missouri
                                     August 23, 2023
 7           Defendant.

 8
                     . . . . . . . . . . . . . . . . . . . . . .
 9
                       TRANSCRIPT OF SENTENCING
10         BEFORE THE HONORABLE ROSEANN KETCHMARK
                UNITED STATES DISTRICT JUDGE
11

12

13   APPEARANCES:

14    For the Plaintiff:        Mr. David A. Barnes
                                United States Attorney's Office
15                              400 East 9th Street, Suite 5510
                                Kansas City, Missouri 64106
16

17    For the Defendant:        Ms. Laine T. Cardarella
                                Federal Public Defender's Office
18                              1000 Walnut, Suite 600
                                Kansas City, Missouri 64106
19

20
          Proceedings recorded by machine shorthand.  Transcript
21   produced by computer-aided transcription.

22                     Jean M. Crawford, RDR, CRR
                        United States Court Reporter
23                      400 East Ninth Street, #8420
                        Kansas City, Missouri 64106
24                             816.512.5642

25
```

2

1              (Proceedings commenced at 10:38 AM)

2              THE COURT:  Good morning.  Today is Wednesday,

3   August 23rd, 2023, approximately 10:40 in the morning.  And the

4   Court is calling case number 21-cr-03, United States of America

5   versus Wayne Anthony Tripp.  Will the parties please enter

6   their appearances.

7              MR. BARNES:  Your Honor, David Barnes on behalf of

8   the United States.

9              THE COURT:  Good morning.

10             MS. CARDARELLA:  Good morning, Your Honor, Mr. Tripp

11  appears in person and with Laine Cardarella.  Your Honor, my

12  co-counsel, Lesley Smith, is not able to be here today.  She

13  had a death in her family.

14             THE COURT:  Good morning.  And thank you for being

15  here, Ms. Cardarella.  And welcome, Mr. Tripp.

16             Today we're here, Mr. Tripp, for your sentencing

17  hearing.  You pled guilty to count 2, possession with intent to

18  distribute cocaine, on November 23rd, 2022, pursuant to a

19  binding plea agreement, or sometimes we call it an 11(c)(1)(C)

20  plea agreement.  That plea was conditionally accepted.  A

21  presentence investigation report was ordered.  That report was

22  generated and distributed to the parties.  And a final report

23  was issued on May 4th, 2023, along with an addendum that sets

24  forth changes and objections by Mr. Tripp.

25             Ms. Cardarella, have you and Ms. Smith had

41

1          THE COURT:  Counts 1 and 3 of the superseding

2   indictment are dismissed.

3          Do you have a recommendation for placement,

4   Ms. Cardarella?

5          MS. CARDARELLA:  Your Honor, we are asking that the

6   Court recommend to the Bureau of Prisons that Mr. Tripp be

7   placed at a medical center.  We won't make a specific request

8   but a medical center.

9          THE COURT:  All right.  The Court will ask for that

10  screening for placement at a medical facility.

11         Any other requests?

12         All right.  Anything further, Mr. Barnes?

13         MR. BARNES:  No, Your Honor.

14         THE COURT:  Ms. Cardarella, anything further?

15         MS. CARDARELLA:  No, Your Honor.  Thank you.

16         THE COURT:  All right.  Mr. Tripp, I wish you the

17  best of luck.

18              (Proceedings concluded at 11:54 AM)

19                     *  *  *  *  *

20

21

22

23

24

25

42

1        CERTIFICATE

2            I certify that the foregoing is a correct transcript

3    from the record of proceedings in the above-entitled matter.

4

5    October 5, 2023

6

7
                        /s/Jean M. Crawford
8                       JEAN M. CRAWFORD, RDR, CRR
                        United States Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## Administrative Remedy - Informal Resolution
### Marion, Illinois

Inmate's Name: Wayne Tripp          Reg. No. 24778-509   Unit: X-123   Date: 10-11-23

NOTICE:   You are advised that prior to filing a Request for Administrative Remedy [BP-9], you **MUST** attempt to informally resolve your complaint through your counselor. Please follow the three (3) steps listed below.

1. State your specific complaint: I, mr. Tripp am having Issues with my Medical care being meet and treated appropriately. It was part of my sentencing to be housed at a medical facility with lower level access, bottom bunk pass and a cane. Upon arriving at Marion the Co's handcuffed me behind my back with out my cane and made to walk up and down steps.

2. State what efforts you have made to informally resolve your complaint: Filed Request to Staff to Health services to get the documentation stating my needs.

3. State what resolution you request: I would like to be housed at a facility that will and can meet the medical needs. Im suppose to be at medical facility

Inmate's Signature: Wayne Anthony Tripp   Date: 10-   2023

4. Correctional Counselor's Comments (Steps to Resolve): SEE attached Response

Counselor's Signature: _____   Date: 10-11-23

Unit Manager's Review: _____   Date: 10/11/03

| | Received by Counselor from inmate | Attempted informal with inmate by Counselor | BP-9 given to inmate | BP-9 Delivered to Admin. Remedy Clerk |
|---|---|---|---|---|
| Date | 10-11-23 | | 10-11-23 | 10-17-23 |
| Time | 9:58am | | 2:00pm | 3:40pm |
| Counselor | | | | |

**U.S. Department of Justice**
**Federal Bureau of Prisons**

**Administrative Remedy**
**Part B - Response**

**Administrative Remedy Number:** 1183611-F1

This is in response to your Administrative Remedy received on December 6, 2023, wherein you claim that you are having issues with your medical care being met and being treated appropriately at this facility. Specifically, you want to be placed at a medical facility.

A review of your complaint and the documentation provided has been completed. Based on this review, we have determined your complaint is repetitive with Administrative Remedy Number 1180907-F2. In the absence of new information, our response remains firm.

Accordingly, your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_1/11/24_
Date

D. Sproul, Warden

RECEIPT - ADMINISTRATIVE REMEDY


DATE: DECEMBER 13, 2023


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MARION USP

TO  : WAYNE A TRIPP, 24778-509
      MARION USP    UNT: 5 GP    QTR: X01-122L


THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 1183610-F1
DATE RECEIVED  : DECEMBER 6, 2023
RESPONSE DUE   : DECEMBER 26, 2023
SUBJECT 1      : CONSULTANT REFERRALS, RECOMMENDATIONS
SUBJECT 2      : TRANSFER FOR MEDICAL REASONS

BP 9's and associated
documents

Lewis
5·9-2m

**Administrative Remedy - Informal Resolution**
**Marion, Illinois**

Attachment A

Inmate's Name: __Wayne A. Tripp__   Reg. No. __29778509__   Unit: __G__   Date: __5/9/2024__

NOTICE:     You are advised that prior to filing a Request for Administrative Remedy [BP-9], you __MUST__ attempt to informally resolve your complaint through your counselor.  Please follow the three (3) steps listed below.

1.   State your specific complaint: __TO BE TRANSFERRED TO MEDICAL FACILITIE I Previously Submitted a BP-8 and BP-9 which I forwarded to my Attorney in Kansas City Missouri federal defender Laine Carderella. I'm re-submitting documentation of medical reports, records of my issues with Court recommendation See transcripts__

2.   State what efforts you have made to informally resolve your complaint: __Everything possible to get the treatment Care, that's needed from the facility that was recommended by Court  8-23-2023__

3.   State what resolution you request: __To be transferred A.S.A.P TO Medical facility. See attached copies of documentations.__

Inmate's Signature: __Wayne A.Tripp__   Date: __5-9-2024__

4.   Correctional Counselor's Comments (Steps to Resolve): __See the attached__

Counselor's Signature: __C. C.__   Date: __5-13-24__

Unit Manager's Review: __8__   Date: __5/13/24__

| Medical | Received by Counselor from inmate | Attempted informal with inmate by Counselor | BP-9 given to inmate | BP-9 Delivered to Admin. Remedy Clerk |
|---|---|---|---|---|
| Date 5/9/24 | 5-9-24 | 5-14-24 | 5-14-24 | 5-15-24 |
| Time | 1200p | 1215p | 1220p | 1200p |
| Counselor | C. Kerr | Kerr | Kerr | Kerr |

**Administrative Remedy-Informal Resolution (BP-8) Attachment**

**Marion, Illinois**

**Correctional Counselors Comments (Steps to Resolve)**

**For inmate TRIPP, Wayne  #24778-509**

**4**.  Medical has indicated you are a normal Care Level 2, therefore it is not justified to transfer you to a medical center at this time.

According to the recommendations of transfer guidelines, you may request a transfer to another facility after you have completed 18 months at this institution with clear conduct if a transfer isn't deemed medically justified. You arrived here on September 25, 2023.

| Inmate Name: TRIPP, WAYNE A | | Reg #: 24778-509 |
|---|---|---|
| Date of Birth: 10/21/1960 | Sex: M   Race: BLACK | Facility: MAR |
| Encounter Date: 10/10/2023 08:03 | Provider: Moulton, Andrew RN | Unit: X01 |

Yes: Symmetry of Motor Function

**Exam Comments**

Inmate with long list of complaints which most are chronic issues. Will place on to see the PA as he is having difficulty with urination after his tamsulosin was stopped and only taking prazosin.

**ASSESSMENT:**

Other

Difficulty with urination.

**PLAN:**

Schedule:

| **Activity** | **Date Scheduled** | **Scheduled Provider** |
|---|---|---|
| Sick Call/Triage | 10/10/2023 00:00 | MLP 02 |
| Difficulty with urination, prazosin not working | | |

Disposition:

Follow-up at Sick Call as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 10/10/2023 | Counseling | Access to Care | Moulton, Andrew | Verbalizes Understanding |
| 10/10/2023 | Counseling | Plan of Care | Moulton, Andrew | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Moulton, Andrew RN on 10/10/2023 08:09

Requested to be reviewed by Richardson, J. (MAT) FNP-C.

Review documentation will be displayed on the following page.

Inmate Name:    THOMP, WAYNE A                                                    Reg #:    24778-509
Date of Birth:    10/21/1960                    Sex:    M    Race:  BLACK          Facility:  MAR
Encounter Date:  01/26/2024 09:59              Provider:  Pass, Randall (MOUD)     Unit:    X01

**New Laboratory Requests:**

| Details | Frequency | Due Date | | Priority |
|---|---|---|---|---|
| Lab Tests - Short List-General-Lipid Profile | One Time | ▇▇▇ | 00:00 | Routine |
| Lab Tests - Short List-General-Hemoglobin A1C | | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | | |
| Lab Tests - Short List-General-CBC w/diff | | | | |

Labs requested to be reviewed by:          Richardson, J. (MOUD) FNP-C

**Discontinued Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Urology | ▇▇▇ | ▇▇▇ | Routine | No | |

Subtype:

Offsite Urology. NOS

Reason for Request:

UROLOGY - Inmate with long standing issue of urinary frequency and incomplete voiding.  On Proscar and prazosin.  Still reports taking 2-3 minutes to initiate urinary stream.

**Disposition:**

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed
Discharged to Housing Unit with Restrictions

**Other:**

HYPERTENSION  -- blood pressure a bit high today, usually runs better -- will continue Lisinopril
*BMI up to 31, he is aware
*EKG & CXR on chart
*Labs are UTD and reviewed
*Fundoscopic exam -- placed on Optometry scheduler to be seen
*immunizations -- UTD with annual flu shots

Mental health --
*doing well on Duloxetine, renewed this after verifying consent on chart
*does not feel like the prazosin is helping much, will stop this (see below)
*needs periodic labs to screen for diabetes, dyslipidemia, thyroid -- all recent labs perfect in this regard
*denies being suicidal or otherwise unstable

LIPIDS -- on atorvastatin, with cholesterol at 133
*10 year CV risk remains high at 15%

BACK PAIN / SCIATICA
*on duloxetine, which may be helping some
*has cane
*has x-rays ordered in near future, as none are yet on chart

ASTHMA -- on PRN albuterol, will monitor for over use
*CXR/immunizations -- as above
*normal lung exam and O2 saturation in office today

SKIN -- agree with referral to general surgery for consideration of cutting out this cyst -- likely a sebaceous cyst based on appearance

URINARY -- describes typical BPH symptoms
*PSA was reassuring at 1.6
*will check urinalysis
*will optimize BPH meds, by switching back to Tamsulosin, and continuing the Finasteride
*discussed that for now we will hold off on the Urology referral -- aggressive interventions have significant risk of side

| Inmate Name: | TR_P, WAYNE A | | | Reg #: | 24778-509 |
|---|---|---|---|---|---|
| Date of Birth: | 10/21/1960 | Sex: ' M-' Race: BLACK | | Facility: | MAR |
| Encounter Date: | 01/26/2024 09:59 | Provider: Pass, Randall (MOUD) | | Unit: | X01 |

## New Medication Orders:

| Rx# | Medication | | Order Date |
|---|---|---|---|
| | Tamsulosin HCl Capsule | | 01/26/2024 09:59 |
| | **Prescriber Order:** | 0.4 mg Orally each evening x 365 day(s) -- Take 2 a day to control prostate symptoms | |
| | Indication: | Enlarged prostate with lower urinary tract symptoms (BPH) | |

## Renew Medication Orders:

| Rx# | Medication | | Order Date |
|---|---|---|---|
| 189567-MAR | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | | 01/26/2024 09:59 |
| | **Prescriber Order:** | *SHAKE WELL* and Inhale 2 puffs by mouth four times daily AS NEEDED *1 inhaler must last 90 days* x 365 day(s) | |
| | Indication: | Asthma | |
| 189569-MAR | DULoxetine HCl Delayed Rel 60 MG Cap | | 01/26/2024 09:59 |
| | **Prescriber Order:** | Take one capsule (60 MG) by mouth each day *consent form on file * x 180 day(s) | |
| | Indication: | Sciatica, unspecified side, Major Depressive Disorder: Recurrent Episode: Severe, Posttraumatic Stress Disorder | |

## Discontinued Medication Orders:

| Rx# | Medication | | Order Date |
|---|---|---|---|
| *189572-MAR* | *Prazosin Cap 5 MG* | | *01/26/2024 09:59* |
| | **Prescriber Order:** | *Take one capsule (5 MG) by mouth at bedtime for the first week then--- Take two capsules (10 MG) by mouth at bedtime* | |
| | Discontinue Type: | *When Pharmacy Processes* | |
| | Discontinue Reason: | *Failed Therapy* | |
| | Indication: | | |

## Other Active Medications

| Rx# | Medication | Stop Date | SIG |
|---|---|---|---|
| 189567-MAR | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | 03/27/2024 | *SHAKE WELL* and Inhale 2 puffs by mouth four times daily AS NEEDED *1 inhaler must last 90 days* |
| 189568-MAR | Atorvastatin 20 MG TAB | 09/28/2024 | Take one tablet (20 MG) by mouth each day |
| 189569-MAR | DULoxetine HCl Delayed Rel 60 MG Cap | 03/27/2024 | Take one capsule (60 MG) by mouth each day *consent form on file * |
| 189570-MAR | Finasteride 5 MG TAB | 09/28/2024 | Take one tablet (5 MG) by mouth each day |
| 189571-MAR | Lisinopril 40 MG Tab | 09/28/2024 | Take one tablet (40 MG) by mouth each day |

## Other Active IVs:

| Rx# | Medication | Stop Date | SIG |
|---|---|---|---|
| No IVs to be Reconciled. | | | |

## Other Active OTCs:

| Medication | OTC Source | Start Date | Stop Date |
|---|---|---|---|
| No OTCs to be Reconciled. | | | |

Allergies
No Known Allergies

| Inmate Name: | TRIPP, WAYNE A | | | Reg #: | 24778-509 |
| Date of Birth: | 10/21/1960 | Sex: M | Race: BLACK | Facility: | MAR |
| Encounter Date: | 01/26/2024 09:59 | Provider: Pass, Randall (MOUD) | | Unit: | X01 |

| Date | Time | Rate Per Minute | Provider |
|------|------|-----------------|----------|

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|------|------|-------|----------|----------|-----------|----------|
| 01/26/2024 | 10:12 MAR | 137/92 | | | | Pass, Randall (MOUD) MD, |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|------|------|----------|-----|----------|
| 01/26/2024 | 10:12 MAR | 95 | | Pass, Randall (MOUD) MD. NCR Regional Physician |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|------|------|-----|-----|---------------|----------|
| 01/26/2024 | 10:12 MAR | 213.0 | 96.6 | | Pass, Randall (MOUD) MD, NCR Regional |

**ROS Comments**

Biggest concerns are:
-lump on neck, says he had family member with melanoma
-urinary symptoms
-back pain and sciatica

**Exam Comments**

BMI = 29
Has baseline ███/Hepatitis testing on chart
Has baseline CXR and EKG on chart
Recent labs:
-negative microalbumin screen
-CMP with CR 1.43
-CBC with WBC 3.3
-cholesterol 133, HDL 49, LDL 74
-PSA 1.6
-normal TSH

63 year old male who is alert, oriented and in no distress.
Skin exam shows a cyst on right neck, appears to be sebaceous cyst
Neck is supple, normal ROM.
Lungs clear throughout, no wheezing.
Heart regular, no murmur.
No lower extremity edema is noted.
Gait is with use of a cane. No obvious fall risk.
Mental status shows logical thought process and appropriate mood.

**ASSESSMENT:**

Asthma, J45909 - Current

Enlarged prostate with lower urinary tract symptoms (BPH), N401 - Current

Essential (primary) hypertension, I10 - Current

Hyperlipidemia, unspecified, E785 - Current - *on atorvastatin, with cholesterol 133 on recent labs*

Sciatica, unspecified side, M5430 - Current

Major Depressive Disorder: Recurrent Episode: Severe, F33.2 - Current

Other Specified Personality Disorder, F60.89 - Current

**PLAN:**

**Medication Reconciliation.**
**The patient's known medication list including OTC items was compiled and compared to new and changed BOP orders.**



# Bureau of Prisons
# Health Services
# Consultation Request

| Inmate Name: TRIPP, WAYNE A | Reg #: 24778-509 | Complex: MAR |
|---|---|---|
| Date of Birth: 10/21/1960 | Sex: M | |

**Report of Consultation:** General Surgery **Subtype:** Onsite Eval, NOS

Inmate Name: TRIPP, WAYNE A Reg #: 24778-509
Date of Birth: 10/21/1960 Sex: M
Institution: MARION USP
4500 PRISON ROAD
MARION, Illinois 62959
6189641441

**Assessment:** *2 cm cyst (R) neck for > 1 year.*
*Fm hx of melanoma, wishes removed*

**Plan:** *Excision cyst (R) neck*

*[signature]* 3/14/24
0900

**Signature**
**Date**

**Completed By:**

Report may be hand-written or (preferably) typed on this form. If dictated on office or hospital letterhead to follow, please indicate essential findings or recommendations to be acted upon pending final report.

Follow-up services and primary responsibility for inmate health care remains with Bureau of Prisons staff. While discussion of diagnostic/treatment options with the inmate may be appropriate, they are subject to review by the inmate's primary care provider, the institution utilitzation review committee and/or the BOP National Formulary.

Please notify institution prior to scheduling surgery dates or follow-up appointments.

**Inmate not to be informed of appointment dates.**

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| Inmate Name: | TRIPP, WAYNE A | | | Reg #: | 24778-509 |
|---|---|---|---|---|---|
| Date of Birth: | 10/21/1960 | Sex: | M   Race: BLACK | Facility: | MAR |
| Note Date: | 01/26/2024 10:44 | Provider: | Pass, Randall (MOUD) | Unit: | X01 |

Admin Note - Orders encounter performed at Health Services.

**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**        Provider:   Pass, Randall (MOUD) MD, NCR Regional Physician

Intended to add lab orders in my CCC note from today

**New Laboratory Requests:**

| Details | Frequency | Due Date | | Priority |
|---|---|---|---|---|
| Lab Tests-U-Urinalysis w/Microscopic Reflex | One Time | ▉▉▉▉▉ | 00:00 | Routine |
| Lab Tests-C-Cystatin C w/GFR | | | | |
| Labs requested to be reviewed by: | Richardson, J. (MOUD) FNP-C | | | |

**Copay Required:** No            **Cosign Required:** No

**Telephone/Verbal Order:**   No

Completed by Pass, Randall (MOUD) MD, NCR Regional Physician on 01/26/2024 10:45

| Inmate Name: TRIPP, WAYNE A | | Reg #: 24778-509 |
| Date of Birth: 10/21/1960 | Sex: M   Race: BLACK | Facility: MAR |
| Encounter Date: 01/26/2024 09:59 | Provider: Pass, Randall (MOUD) | Unit: X01 |

effects, and I would not pursue this unless he is miserable despite maximal medical therapy

RENAL -- CR 1.43 on initial labs, will follow

All questions answered, and appropriate follow-up is arranged

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/26/2024 | Counseling | Plan of Care | Pass, Randall | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Pass, Randall (MOUD) MD, NCR Regional Physician on 01/26/2024 10:44

Reg #: 24778-509

Inmate Name: TRIPP, WAYNE A

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Asthma<br>09/25/2023 20:26 EST Stallings, Austin (MAT) DMS, PA-C | | ICD-10 | J45909 | 09/25/2023 | Current | |
| Alopecia areata<br>09/16/2021 18:08 EST Gwathney, J. (MAT) M.D., MPH/CD | | ICD-10 | L639 | 09/16/2021 | Current | |
| Sciatica, unspecified side<br>01/03/2022 16:28 EST Petersen, T PA-C<br>09/16/2021 18:08 EST Gwathney, J. (MAT) M.D., MPH/CD | | ICD-10<br>ICD-10 | M5430<br>M5430 | 09/16/2021<br>09/16/2021 | Current<br>Current | |
| Chronic kidney disease, stage 3 unspecified<br>10/06/2023 08:00 EST Stallings, Austin (MAT) DMS, PA-<br>10/4/23: Creat 1.43   GFR: 55 | | ICD-10 | N1830 | 10/06/2023 | Current | |
| Enlarged prostate with lower urinary tract symptoms (BPH)<br>09/25/2023 20:29 EST Stallings, Austin (MAT) DMS, PA-C | | ICD-10 | N401 | 09/25/2023 | Current | |
| Rash and other nonspecific skin eruption<br>Stallings, Austin (MAT) DMS, PA-C<br>'23 20... | | ICD-10 | R21 | 09/25/2023 | Current | |
| COVID-19 test negative<br>13:23 EST Hannah, A. QIIC FNP-C<br>...ott Ag neg 12/15 | | ICD-10 | Z03818- | 12/15/2021 | Current | |
| ...J21 11:09 EST Manio, W. RN,IDC/IOP<br>CLEARED; BINAX 08/13/21 INTAKE; QUEST 08/27/21 | | ICD-10 | Z03818- | 08/13/2021 | Current | |
| /17/2021 13:28 EST Gamble, Susanna RN/HSS<br>NOT CLEARED; BINAX 08/13/21 INTAKE | | ICD-10 | Z03818- | 08/13/2021 | Current | |
| HCV Negative<br>11/11/2023 11:48 EST Pass, Randall (MAT) MD, NCR Regional Physician | | ICD-10 | Z1159- | 11/11/2023 | Current | |

## Remission

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Stimulant Related Disorders: Severe: Cocaine | | ICD-10 | | | | |

*Handwritten note:* Never knew anything about this I until I asked for medical Records., No doctors Never discussed any medications nor any treatment This is a forseeable issue. Civil deliberate Indifference.

# Bureau of Prisons
## Health Services
## Medical Duty Status

Reg #:  24778-509                     Inmate Name:  TRIPP, WAYNE A

### Housing Status

___ confined to the living quarters except  ___ meals  ___ pill line  ___ treatments       Exp. Date: _____

___ on complete bed rest:  ___ bathroom privileges only                                    Exp. Date: _____

__X__ cell:  __X__ cell on first floor  ___ single cell  __X__ lower bunk  ___ airborne infection isolation    Exp. Date: __09/25/2024__

___ other: _____           Exp. Date: _____

### Physical Limitation/Restriction

___ all sports                                                                             Exp. Date: _____

___ weightlifting:  ___ upper body  ___ lower body                                         Exp. Date: _____

___ cardiovascular exercise:  ___ running  ___ jogging  ___ walking  ___ softball          Exp. Date: _____
                             ___ football  ___ basketball  ___ handball  ___ stationary equipment

___ other: _____           Exp. Date: _____

### May have the following equipment in his / her possession:

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Cane | 09/25/2023 | | |
| From intake | | | |
| NEEDS ISSUED , NMOS in | 08/13/2021 | | |
| Dentures | | | |
| From intake | 08/13/2021 | | |
| Eye Glasses | | | |
| From intake. Reported to be prescription. | | | |

### Work Restriction / Limitation:

Cleared for Food Service:  __No__

__X__ No Restrictions

**Comments:**  Low Bunk: age 70

Stallings, Austin (MOUD) DMS, PA-C                              __09/25/2023__
_____                          Date
Health Services Staff

Inmate Name: ____TRIPP, WAYNE A____     Reg #: __24778-509__   Quarters: __G02__

*ALL EXPIRATION DATES ARE AT 24:00*

adjudication can be used unless the record has been expunged or vacated.

Minor History of Violence - Aggressive or intimidating behavior which is not likely to cause serious bodily harm or death (e.g., simple assault, fights, domestic disputes, etc.) There must be a finding of guilt.

Serious History of Violence - Aggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.).

There must be a finding of guilt.

**Example:**   If an offender was found guilty of homicide 20 years ago and a simple assault 3 years ago, assign 5 points for the simple assault.   Or in another case, the offender had guilty findings for homicide 12 years ago; aggravated assault 8 years ago; and fighting 2 years ago, score 6 points for the aggravated assault 8 years ago.

**NOTE:**   Attempted suicide, self-mutilation and possession of weapons are not applicable behaviors for History of Violence scoring.   In addition, verbal threats (such as Code 203-Threatening Bodily Harm) are to be viewed as minor violence.


## 10. HISTORY OF ESCAPE OR ATTEMPTS

| 10. HISTORY OF | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| ESCAPE OR | MINOR | 0 | 1 | 1 | 2 | 3 |
| ATTEMPTS | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) |

Enter the appropriate number of points that reflect the escape history of the individual considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).                    Escape history includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community

progstat                                1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

supervision, excluding the current term of confinement.

**Exception:** Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item. DSCC staff must review the Chronological Disciplinary Record (CDR) for inmates who were previously housed in a federal institution or contract facility. Any escape(s) or attempt(s) reflected on the CDR must be scored as a history item. State disciplinary findings are to be scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Fleeing or Eluding Arrest, Failure to Appear for traffic violations, Absconding, runaways from foster homes and similar

behavior should not to be scored under the Escape History item, even if clearly documented, but should be considered on a case-by-case basis under the Management Variable "Greater Security." Failure to Appear or Flight to Avoid Prosecution for any offense however, must be counted when there is a documented finding of guilt.

In determining time frames, use the date of the documented occurrence. Documented information from a juvenile, YCA, or DCYRA adjudication can be used unless the record has been expunged or vacated.

Minor History of Escape - An escape from an open institution or program (e.g., minimum security facility, CCC, furlough) not involving any actual or threat of violence. Also includes military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and Absconding from Community Supervision. There must be a finding of guilt except as previously noted.

Serious History of Escape - An escape from secure custody with or without threat of violence. Also includes escapes from an open facility or program with actual threat of violence. There must be a finding of guilt. S = 3 points and requires application of PSF L.

progstat

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

History Points fall into one of six categories.

**CURRENT OFFENSE.**      For classification purposes, the current offense is the most severe documented instant offense behavior regardless of the conviction offense.

**CUSTODY CLASSIFICATION.**  The review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment. A custody level (i.e., **COMMUNITY, OUT, IN,** and **MAXIMUM**) dictates the degree of staff supervision required for an individual inmate.

**DESIGNATION.**  An order from the DSCC indicating the initial facility of confinement for an inmate.

**DESIGNATION FACILITY (DFCL).** Each of the separate missions within an institution for designation purposes.  Each DFCL is shown as a separate line on the Population Report and has its own security level and destination (DST) assignment.

Designations are made to a DFCL code rather than to a facility (FACL) code.

**JUDGMENT.**   The official court document (e.g., Judgment and Commitment Order or Judgment in a Criminal Case) which is signed by the Judge.   The Judgment contains the offense(s) for which the court imposes its sentence, which ordinarily includes a financial, confinement and supervision obligation.

**HISTORY.**  The inmate's entire background of criminal convictions (excluding the current offense) and institutional disciplinary findings used to assess points related to his/her history of violence and/or history of escape.

**IN CUSTODY.**  The second highest custody level assigned to an inmate which requires the second highest level of security and staff supervision.   An inmate who has **IN** custody is assigned to regular quarters and is eligible for all regular work assignments and activities under a normal level of supervision.

Inmates with **IN** custody are not eligible for work

details or programs outside the institution's secure perimeter.

**LEGAL RESIDENCE.**      The inmate's local and state address as reported by the United States Probation Office at the time of conviction.

**LONG-TERM DETAINEE.**   A non-U.S. citizen (alien) who has:

progstat                              3

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

- finished serving a local, state, or federal sentence;

- completed immigration proceedings that have resulted in an order of deportation, exclusion, or other means of

removal by either the Executive Office for Immigration Review (EOIR), or the Bureau of Immigration and Customs Enforcement (ICE), formerly the Immigration and Naturalization Service (INS); and,

- cannot be removed from the country for various reasons.

**MANAGEMENT SECURITY LEVEL (MSL)**. Management Security Level is the security level assigned by the DSCC Administrator or designee to an inmate upon application of any of the following Management Variables:

- PSF Waived;

- Greater Security; and,

- Lesser Security.

Based on these Management Variables, the Management Security Level will normally be one security level greater or lesser than the scored security level.

**MANAGEMENT VARIABLE**. A Management Variable (MGTVs) reflects and supports the professional judgment of Bureau staff to ensure the inmate's placement in the most appropriate level institution. A Management Variable(s) is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score — a score which may not completely/ accurately reflect his or her security needs.

**MAXIMUM CUSTODY**. The highest custody level assigned to an inmate requiring the highest level of security and staff supervision. An inmate with **MAXIMUM** custody requires ultimate control and supervision. This classification is for individuals who, by their behavior, have been identified as assaultive, predacious, riotous, serious escape risks, or seriously disruptive to the orderly running of an institution. Accordingly, quarters and work assignments are assigned to ensure maximum control and supervision. A custody change to or from **MAXIMUM** custody must be justified thoroughly on the BP-338 form and maintained permanently in the Inmate Central File.

**MISDEMEANANT**. An inmate convicted of an offense for which the maximum penalty is one year or less. Such inmates may not be

progstat

4

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

transferred to a High security institution without first signing a waiver.   18 U.S.C. § 4083 prohibits placement of such inmates in "penitentiaries" without their consent; however, the Bureau broadens that prohibition to include any High security institution. A sample of the waiver is provided in Appendix B.

**OUT CUSTODY.**   The second lowest custody level assigned to an inmate requiring the second lowest level of security and staff supervision. An inmate who has **OUT** custody may be assigned to less secure housing and may be eligible for work details outside the institution's secure perimeter with a minimum of two-hour intermittent staff supervision.

## PAROLE, MANDATORY RELEASE, OR SPECIAL PAROLE TERM VIOLATOR.

Violators are inmates who were released from Bureau custody to the supervision of a D.C. or U.S. Probation Officer (USPO) and have violated the conditions of their release.   These violators are returned to Bureau custody and are required to have a parole hearing within certain time limits.   The purpose of this is to provide the inmate with an in-person hearing before the U.S. Parole Commission (USPC) to determine if the inmate has violated the conditions of parole, mandatory release, or special parole. Therefore it is necessary to temporarily place these individuals at parolable institutions in order to conduct parole hearings.

**PRIVATIZED FACILITY.** A prison, institution, or other correctional facility that is operated or supervised by a non- governmental entity.     Privatized facilities are managed by private organizations or individuals with oversight provided by Bureau staff.

**PUBLIC SAFETY FACTOR.** There are certain demonstrated behaviors which require increased security measures to ensure the protection of society. There are nine Public Safety Factors (PSFs) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security).   The application of a

progstat                                     5

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior.

**REDESIGNATION.** The reassignment of an inmate from one institution to another after initial designation. Unit staff submit a request to the DSCC, and the inmate's case is reviewed for possible transfer. Approval of a redesignation results in an order from DSCC staff indicating a correctional institution to which an inmate is to be transferred. The actual movement of an inmate from one institution or facility to another is referred to as a transfer.

**RELEASE RESIDENCE.** The verifiable destination to which an inmate realistically plans to reside upon release from Bureau custody. The inmate must provide proof of residence to his or her unit staff. Staff will rely upon the following references to assist in verification: Presentence Investigation Report/USPO verification; telephone and visiting lists; and, incoming and outgoing mail.

**SECONDARY DESIGNATION.** The second part of a two part designation, usually after a temporary designation to receive medical/mental health treatment or to participate in a specific institutional program or parole hearing.

**SECURITY LEVEL.** Used to describe the structural variables and inmate-to-staff ratio provided at the various types of Bureau institutions (i.e., Minimum, Low, Medium, High). It also identifies the institution type required to house inmates based on their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-staff ratio, and internal security.

**STATEMENT OF REASONS.** The Statement of Reasons (SOR) is an attachment to the criminal judgment (Judgment and Commitment Order; Judgment in a Criminal Case) which indicates the reason for the court's final sentence, and other sentencing related issues (e.g., resolution of disputed issues, changes in scoring, statements of court intent, etc.). It is required in every felony case where the sentencing range exceeds 24 months, or whenever there is a departure from the U.S. Sentencing Guidelines range. The court may complete an SOR even if not required.

**STUDY CASE.** A study case is an inmate who is committed for a period of study and observation pursuant to 18 U.S.C. §§ 3552(b)

progstat                                             6

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

or (c)), 4241(b) or (d), 4242(a), 4243(a) or (b), 4244(b),

4245(b), 4246(b), or 4247(b) or (c)). An inmate committed for a study and observation will be referred to the Central Office Medical Designator in the Office of Medical Designations and Transportation (OMDT) for designation to a facility that can complete the study, considering any specific medical or psychiatric issues which should be addressed. The Central Office

Medical Designator should attempt to place the inmate in the most suitable facility compatible with the offender's security and custody needs, closest to the court and available resources.

## SECURITY DESIGNATION PROCEDURES FOR NEW COMMITMENTS

The Designation and Sentence Computation Center will ordinarily complete the initial designation within three working days of receiving all the necessary documentation from the U.S. Marshals Service (USMS) and the U.S. Probation Officer (USPO) which includes the following: the Presentence Investigation Report (PSR), Judgment, Statement of Reasons (SOR), and Central Inmate Monitoring (CIM) documentation (in cases where a CIM assignment is necessary).

The DSCC will refer all requests for initial designation with potential medical/mental health concerns to the Office of Medical Designations and Transfers (OMDT), Health Services Division, Washington, D.C. no later than the following work day.

## 1. DESIGNATION PROCEDURES

The following is the normal chronology of an initial designation.

    a.    The inmate is sentenced.

    b.    The Clerk of the Court transmits the Judgment and

progstat             7

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Commitment Order (old law cases) or Judgment in a Criminal Case (new law cases) to the USMS.

c.   The USMS makes a request to the DSCC advising that the inmate is now ready for designation to a facility.

d.   If it has not already been provided, DSCC staff must contact the necessary officials (USPO or USMS) for the following: two copies of the PSR, a copy of the Judgment, to include the SOR, and the Individual Custody and Detention Report (USM-129).

If the SOR is not provided with the Judgment, DSCC staff will make a reasonable effort to obtain a copy by contacting the Court or USPO.   If no SOR

was prepared for the case or cannot be obtained, DSCC staff will note this in the "Remarks" section of the BP-337 and proceed with the designation process. These procedures will ensure the Bureau is following the intentions of the Court when designating a facility, as the SOR may contain information which overrides the PSR and may affect scoring decisions.

Based on a review of the data, DSCC staff will determine whether a non-federal facility should be designated. If a PSR has not been prepared, DSCC staff will complete a National Crime

Information Center (NCIC) and National Law Enforcement Telecommunication System (NLETS) criminal history check to obtain background information.   DSCC staff will then load appropriate information on the SENTRY Update Security Designation screen with a notation that no PSR was available.

DSCC staff will contact the USPO and request that a Postsentence Investigation Report be prepared, and forwarded to the designated facility.   DSCC staff will document this contact on the SENTRY Update Security Designation Screen.

Frequently, in cases involving Reentry after Deportation, Presentence/Postsentence Investigation Reports are not prepared. In those particular cases, a Magistrate Information Sheet may be used. A Magistrate Information Sheet is a document prepared by U.S. law enforcement officials.   This document contains a summary of the facts related to the defendant's arrest and prior criminal/personal history.   This information is primarily obtained through the arresting officer's report, the FBI Rap Sheet and an interview with the defendant.

If more than six months has elapsed since the PSR was prepared, DSCC staff will contact the USPO to determine if there is any new

progstat

8

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

or significant information that should be considered. If the offender was a study case before final sentencing, DSCC staff will take into consideration the results of that study in completing the designation request. The result of the study may be obtained from a PSR, a summary report, or any other information available.

If offense or background information is not available prior to designation, an inmate must be designated to at least a Low security level institution. When information is obtained, the institution may request redesignation, if appropriate.

   e.    The DSCC uses classification material and SENTRY to determine if Central Inmate Monitoring (CIM) precautions need to be taken. This includes a name search to determine if the offender was previously confined under the current or previous register number. If new to the Bureau, the inmate must be loaded into SENTRY and "admitted" to the DSCC "facility," with any appropriate CIM assignment(s) entered. DSCC staff will identify the documents used to support CIM assignments and forward the documents to the designated institution.

   f.    DSCC staff will complete and enter into SENTRY an Inmate Load and Security Designation form (BP-337) on all cases with terms exceeding 30 days. The DSCC staff member loading the data has the discretion to complete a hard copy version or may enter the information directly into SENTRY.

DSCC staff must determine if there is a break in custody when the inmate is transferring to federal custody after service of a state sentence. The DSCC usually has access to this type of information for jail credit purposes.

           If there is no physical release from custody, DSCC staff will consider the state offense as part of the current term of confinement for classification purposes and will not assign any history points for the state offense.

   g.    Each work day, DSCC Designation Officers determine which cases require designation by displaying a SENTRY Daily Log for a listing of those cases entered the previous day (also to include weekends and holidays). The Designator displays the Initial Designation Data screen and follows the prompts on the screen. This will lead the Designator through a display of the "CIM Clearance and Separatee Data" screen and "Update Security Designation" screen. A list of the appropriate security level facilities will appear in order of proximity to the inmate's legal residence (based on mileage calculated by SENTRY). The

progstat                              9

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

final screen in this series requires that the reason for designation be entered, as well as any clearance remarks by the DSCC Designator.

The objective of inmate classification is to place each inmate in the most appropriate facility for service of sentence.    To accomplish this, the Designator must consider all relevant information regarding the inmate.

In accordance with Rule 38(b) of the Federal Rules of Criminal Procedure, when the court of conviction recommends that the inmate be retained in a place of confinement which will allow the inmate to participate in the preparation of the appeal, the Bureau will make every effort to place the inmate in such a facility.   If a reason exists for not placing the inmate in that facility, the matter is called to the attention of the court and an attempt is made to arrive at an acceptable place of confinement.

   h.    SENTRY provides information on the capacity and inmate population in each institution.   Specifically, for each facility and each Designation Facility (DFCL), SENTRY provides the Rated Capacity, the Designation Capacity, and the percentage of each that the facility or DFCL currently houses.

• The Rated Capacity is a measure of the capacity for which each DFCL was designed.

•   The Designation Capacity is the equitable proportion of the inmates in a particular security level that each designation facility having that security level should house.

The Designation Capacity of each DFCL is based on the rated capacities and population totals of all the DFCLs that have the same security level.    The Rated Capacity and Designation Capacity for a facility are calculated as the total Rated Capacity and Designation Capacity of all the DFCLs that exist within that facility.

Designators will ordinarily use the Designation Capacity as a guide for maintaining population balance and an equitable distribution of inmates.    However, for newly activating institutions, Designators may designate that institution for a percentage of initial designations.

   i.    The Designator assigns a facility, which may include a privately managed facility, and will make every effort to accommodate recommendations from the courts, ie. RDAP, locality,

progstat                                    10

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

etc.

(j)    Upon completion of the initial designation by the DSCC Designator or Central Office Medical Designator, staff in the following areas will make note of the designation by monitoring SENTRY Destination Daily Logs:

(1)    The receiving institution;

(2)    The federal facility (MCC, Detention Center, etc.) holding the inmate being designated;

(3)    The U.S. Marshals Prisoner Transportation Division in Kansas City, Kansas; and,

(4)    The DSCC staff in cases where a medical/mental health inmate has been referred to OMDT.

DSCC staff will inform the USMS who has custody of the inmate of the designation by whatever means is appropriate.

If the inmate is a former study case, DSCC staff must also inform, via GroupWise, the Warden of the institution that completed the study of the designation.   This alerts that facility to forward the Inmate Central File and other records to the institution designated.

If there is a secondary designation (e.g., Parole, Special Parole Term, Mandatory Release Violator Hearing, or following medical treatment), DSCC staff (or Central Office Medical Designator for medical cases) will notify the Warden of the secondary institution.   This will alert the secondary institution that the inmate is designated and will be transported after the program or medical treatment is completed. No other designation notation is needed for a secondary designation.

k.    When a designation is made, DSCC staff will forward all supporting documents to the designated institution within two working days.   If DSCC staff believe that the inmate will arrive at the institution in less than five calendar days, the supporting documentation will be sent to the institution by overnight mail, facsimile, or electronically, within one working day of the designation.

l.    The Case Management Coordinator (CMC) will monitor all pending arrivals at that facility.   However, if the institution has separate DFCLs for specialized programs (i.e., RDAP, Sex Offender Treatment Program, Life Connections, etc.) or for a satellite camp, then the CMC may delegate this responsibility to staff assigned to those specialized programs or populations.

progstat                                11

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Staff will monitor the Daily Log for that facility, and will print a hard copy of each designation and maintain a copy on file for 120 calendar days. In certain facilities other methods may be just as effective in monitoring pending arrivals.

For example, institutions with a large holdover or pretrial population can be monitored more effectively by running a daily pipeline roster filtering out all "A-HLD"s and "A-PRE"s.

Staff will also monitor the arrival of classification material, and if such material has not arrived within 10 calendar days following the designation, the DSCC will be contacted to determine the status of that material. Upon arrival of the classification material, the CMC, or designee, will review that material and verify the scoring of the Inmate Load and Security Designation form (BP-337). If a scoring issue and/or error is discovered, the CMC will contact the DSCC Administrator via GroupWise. The CMC may need to fax certain pages of the Presentence Investigation Report to the DSCC so the case can be appropriately reviewed. If the CMC and DSCC agree that an error has been made, the error will be corrected by the DSCC. If the CMC and DSCC do not agree that an error has been made, the Central Office, Correctional Programs Administrator, will make the final determination.

The DSCC will also be advised of any non-scoring errors or concerns. In either circumstance, if the correction requires a new designation, the DSCC will make any necessary changes and will enter a new designation into SENTRY. The DSCC will then notify the appropriate USMS office(s) of the designation change.

If the original designation is changed, the CMC will forward the classification material to the newly designated institution.

m. The CMC has oversight responsibilities for monitoring the timely arrival of a newly designated inmate. If an inmate serving a term of one year or more has not arrived at the designated institution within 120 calendar days from the date of designation, or if an inmate serving a term of less than one year has not arrived after 30 calendar days, staff will use SENTRY to determine the inmate's current location:

(1) If the inmate is in a Bureau facility, staff will contact that facility to expedite movement or ascertain the reason for delay, and will verify whether the designation continues to be valid; and,

(2) If the inmate is not in a Bureau facility, staff will

progstat

**12**

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

contact the DSCC.   Upon notification, DSCC staff will contact the appropriate authorities and ascertain why the inmate has not arrived at the designated institution.   If DSCC staff decides the designation is no longer valid, the DSCC will cancel the original designation.

If the designation is canceled, the packet will be returned to the DSCC, who then will return the documentation to the originating agency.   Prior to canceling a designation, the DSCC will enter a comment on the "CIM Clearance and Separatee Data" screen to document the reason(s) for this action.   This comment will be the only retrievable documentation available to answer future questions regarding the processing of the case.   It may be necessary to administratively admit the inmate in order to enter the comment.   The DSCC will also delete the associated DST assignment.

Staff will maintain records of their efforts to monitor designations.   These records will be maintained for a period of 120 calendar days from the date of initial designation.

n.   The release to the general public of an inmate's designation or redesignation information is prohibited, for security reasons, until the inmate has arrived at the designated facility.   An inmate confined in a Bureau facility however, may be advised of the destination but will not be advised of the date or time of the transfer.   However, caution should be exercised in advising inmates of their destination. The Warden may define cases where the designation will not be disclosed to the inmate. Officials such as Judges and members of Congress may be advised of designations in response to official inquiries for their official use.

## 2. NON-ROUTINE DESIGNATION PROCEDURES

In certain cases, non-routine designation procedures for new commitments are required.   Listed below are specific examples of non-routine designations.

a.   **Study Cases.**   The DSCC will complete an Inmate Load and Security Designation form (BP-337) and enter it into SENTRY. The DSCC will then notify the Central Office Medical Designator via GroupWise requesting designation.   The Central Office Medical Designator will designate an appropriate institution for the study.   After completion of the study and final sentencing by the court, the DSCC will enter a new Inmate Load and Security

progstat                                        13

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Designation form (BP-337) into SENTRY, based on the actual sentence imposed or other new information.

b. **Medical or Mental Health.** The DSCC is responsible for receiving and evaluating information pertaining to an initial designation. DSCC staff must attempt to ascertain whether an inmate requires medical or mental health evaluation or treatment. This information is ordinarily obtained from the Presentence Investigation Report or other source documents. If medical or mental health concerns are apparent, DSCC staff will provide comments in the "Remarks" section of the BP-337 and enter Y (yes) in the OMDT REF item. DSCC staff will fax portions of the Presentence Investigation Report pertaining to the medical or mental health concerns, and the Judgment in a Criminal Case, if it includes any judicial recommendations, to the Central Office Medical Designator.

Upon review of the daily log for W DESIG M cases, the Central Office Medical Designator will access the Inmate Load and Security Designation form (BP-337) in SENTRY and make a designation based on the available information, ordinarily within three working days. If the Central Office Medical Designator determines there are no medical or mental health concerns affecting placement, the DSCC will be advised. The DSCC will then complete the designation to an appropriate institution.

Only the OMDT will make designations for study cases or for cases requiring medical or psychiatric evaluation or treatment. Designation may be made to any Bureau facility having resources to meet the inmate's needs. The Central Office Medical Designator will ensure that whenever a designation is made to an DFCL inconsistent with the inmate's security level, the appropriate Management Variable is entered.

Administrative facilities are excluded from this requirement.

c. **Military Prisoners.** The Bureau cooperates with the Security, Force Protection and Law Enforcement Division of the Armed Services for the transfer of military prisoners into the Bureau's custody. These cases are coordinated through the DSCC, in accordance with the provisions contained in Chapter 7, Section 17(d).

d. **Parole, Mandatory Release or Special Parole Term Violator Hearing.** For designation purposes, the U.S. Parole Commission (USPC) provides the revocation packet and a copy of the alleged

progstat

14

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

violator's Presentence Investigation Report to the DSCC.    The DSCC will complete an initial designation to a violator hearing site, and a secondary designation to a post-hearing institution for service of the violator term.    The Security Designation Data screen will indicate the inmate is to be housed as a holdover at the violator hearing site.

Once the designation has been completed, the DSCC will notify the U.S. Marshals Office of the designated institution, and mail the violator packet to that institution. The USPC will receive notification via Groupwise.

If after the hearing, new information causes a change in the secondary designation (i.e., short-term parole date), institution staff will contact the DSCC for appropriate action.

· In cases where the projected release date (PRD) is between 60 to 120 days from the date of hearing, the DSCC will consider changing the secondary designation to the nearest appropriate facility.

· In cases where the PRD is 60 days or less from the date of hearing, hearing facility staff will consider having the inmate remain at the hearing facility for release processing purposes.

· If a change in designation is not necessary, institution staff may process the inmate's transfer to the secondary designation.

Procedures for violators requiring medical treatment are referenced in Chapters 3 and 7.    Once the information is reviewed and evaluated by the DSCC, and it is determined that medical or psychiatric treatment is required, the request for designation will be entered into SENTRY and referred to the Central Office Medical Designator for designation.    The DSCC will notify the appropriate USMS Office of the inmate's designated institution, and mail the violator packet to that institution.    The USPC will receive notification via LAN.

Local revocation hearings will be conducted at a site determined by the USPC, normally within commuting distance of where the alleged violation occurred.    The USPC may request, in writing, to the DSCC Administrator that an alleged violator be moved to a Bureau institution.    Violators who have received their local revocation hearing will not be transported until the USPC Notice of Action has been received and a designation has been determined.    In some instances, violators who are granted a short-term release date should be considered for placement in a

progstat                                                    15

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

contract facility.

e.      **Long-term Detainees.**      The Detention Services Branch (DSB), Correctional Programs Division, Central Office, is responsible for the initial designation of long-term detainees. Requests for placement into the BOP from the U.S. Immigration and Customs Enforcement (ICE) are sent directly to DSB, where they are completed.      If a medical or mental health placement is needed, DSB will refer it to the Central Office Medical Designator.

Long-term detainees are no longer serving a sentence but their detention is indeterminate and they will not, in all probability, be repatriated to their home country.

Long-term detainees are from countries, such as Cuba, that refuse to accept their return from the U.S. government.   The Detention Services Branch, Correctional Programs Division, will advise when changes in applicable countries occur.   This does not include citizens from countries that take a significant amount of time to accept its citizens.   Travel orders can be obtained and they are eventually returned.   ICE requests the placement of long-term detainees into the BOP and they are ordinarily designated into a general population.

Long-term detainees include:

• Mariel Cubans, detainees who entered the United States during the Mariel boatlift between April 15, 1980 and October 31, 1980;

• Cubans who entered the United States from other countries, or from Cuba other than during the Mariel boatlift; and,

• Detainees from counties that ICE has identified that refuse to receive its citizens.

Designation procedures for long-term detainees are unique because the detainees are not serving a sentence. Refer to the current Program Statement <u>Mariel Cuban Detainees</u> for the designation procedures.


# 3. DESIGNATIONS TO NON-FEDERAL FACILITIES

The DSCC may designate a federal inmate to a non-federal facility in accordance with the criteria below.   An updated Security Designation form (BP-337) will be completed and entered into SENTRY for any sentence exceeding 30 days.   When the USMS

progstat

16

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

takes custody of an inmate from state or local custody to begin serving a federal sentence, the same procedures for new commitments will be followed.

When designating an inmate to a non-federal facility for an inmate, Designators shall consider the inmate's religious beliefs, if known as one of the factors in making a designation decision.    If possible, a non-federal facility where the inmate's religious beliefs can be accommodated will be designated.    If necessary, Designators may consult with Central Office chaplaincy staff in making this designation decision.

## 4.  TYPES OF COMMITMENTS

a.    **Juvenile Commitments**.  All inmates committed under the Juvenile Justice and Delinquency Prevention Act (JJDPA) and all inmates under the age of 18 will be designated and housed in accordance with the requirements of Program Statement <u>Juvenile Delinquents, Juvenile Justice and</u> <u>Delinquency Prevention Act</u>.

The CCM will complete a BP-337 for juvenile offenders housed in contract juvenile facilities; however, the CCM does not need to complete the BP-338 while the juvenile is housed there unless it is helpful to do so.

**b.    Jail Commitments.**  When funds and appropriate jail space are available, the DSCC may designate a contract jail or detention facility for an inmate who is generally sentenced to one year or less.  If funds and appropriate jail space are not available or if an inmate has special needs, a federal institution will be designated through the DSCC.

Prior to placement, DSCC staff must determine whether

any PSF(s) or other circumstances would contradict a jail

designation.  If so, the lowest security level dictated

by the applicable PSF must be satisfied.

However, such designations should also take into consideration underpopulated Bureau facilities prior to placement in a contract facility.

c.    **Youth Corrections Act (YCA)/District of Columbia Youth Rehabilitation Act (DCYRA) Offenders**.  Although the YCA statutes were repealed effective October 12, 1984 (see 18 U.S.C. §§ 5005 through 5026 (repealed)), an offender originally committed under

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*18 of 33*

these statutes could be returned to custody as a parole violator. Ordinarily, DCYRA inmates will not be initially designated to non-federal facilities.

d. **State Prisoners**. 18 U.S.C. § 5003 enables the Director, Bureau of Prisons, to establish contracts to accept state prisoners for boarding in federal institutions. The term "State" as used in this section includes any state, territory, or possession of the United States. The statute does not permit the Bureau to contract placement of state prisoners in third party custody. This includes CCC placements.

When there is a compelling reason for placing a state prisoner in a non-federal facility, institution staff will contact the DSCC Administrator, who may suggest to officials of the state that they may want to make their own direct placement in a non- federal facility.

Once an inmate is accepted into Bureau custody, occasionally, there may be a reason to return the inmate to the original state. In this instance, institutional staff will contact the DSCC Administrator. If the DSCC Administrator determines that it would be appropriate for the inmate to be returned, they will contact state officials.

**INMATE LOAD AND SECURITY DESIGNATION FORM INSTRUCTIONS (BP-337)**

## INMATE LOAD DATA

The Inmate Load Data section (Items 1 to 25) of the Inmate Load and Security Designation form (BP-337) records the physical and demographic information of inmates entered into SENTRY (the Bureau of Prisons' on-line database). In practice, inmates are entered into SENTRY whether or not the inmate's security level is scored (e.g., pre-trial detainees, material witnesses, etc.). Therefore, when the initial security designation data is entered into SENTRY it is essential that the load data is compared to the information contained in the Presentence Investigation Report

progstat

18

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(PSR), and that the information is updated or reconciled as appropriate.

| 1. REGISTER NUMBER | | | | |
|---|---|---|---|---|
| 2. LAST NAME | | 3. FIRST NAME | 4. MIDDLE | 5. SUFFIX |
| 6. RACE | 7. SEX | 8. ETHNIC ORIGIN | 9. DATE OF BIRTH | |
| 10. OFFENSE/SENTENCE | | | | |
| 11. FBI NUMBER | | | 12. SSN NUMBER | |
| 13. STATE OF BIRTH | | 14. OR COUNTRY OF BIRTH | 15. CITIZENSHIP | |
| 16. ADDRESS-STREET | | | | |
| 17. CITY | | 18. STATE | 19. ZIP | 20. OR FOREIGN COUNTRY |

| 21. HEIGHT:FT   IN ____ | 22. WEIGHT: | 23. HAIR COLOR | 24. EYE COLOR |
|---|---|---|---|
| 25. ARS ASSIGNMENT | | | |

1. **REGISTER NUMBER.** The U.S. Marshals Service (USM) assigns an eight-digit register number to each inmate with the last three digits denoting the U.S. Marshals' judicial code. The format is five digits, hyphen, three digits.

2. **LAST NAME.** Twenty-four spaces are provided for the inmate's last name, which must match the name on the Judgment. The first character must be a letter. Each subsequent character must be a letter, space, hyphen, or apostrophe.

3. **FIRST NAME.** Twelve spaces are provided for the inmate's first name.

**NOTE:** Only the inmate's committed name (as it appears in

4. **MIDDLE** Eight spaces are provided for the inmate's middle

progstat                                    19

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

5    name.
     **SUFFIX**    Three        are provided for any name suffixes
                   spaces

the Judgment) will be entered on the "Load Inmate" transaction. All other names (e.g., true name, aliases, nicknames, maiden name, etc.) will be entered into SENTRY using the "Update Nicknames and Aliases" transaction.

(i.e., Jr., Sr., II).   Suffix codes are found in the Name Suffix Code section of the SENTRY General Use Technical Reference Manual (TRM).

6.    **RACE**. Standards for the Classification of Federal Data on Race and Ethnicity are set by the Office of Management and Budget.  Enter the appropriate code:

| CODE | RACE | DEFINITION |
|------|------|------------|
| A | Asian | A person having origins in any of the Pacific Islands or any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. |
| B | Black or African American | A person having origins in any of the black racial groups of Africa. |

progstat

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

| I | American | A person having origins | in any of |
|---|----------|-------------------------|-----------|
|   | Indian or | the original peoples of | North and |

Alaska Native    South America (including Central America), and who maintains tribal affiliation or community attachment.

W    White    A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

7.   **SEX.**   Enter M = Male or F = Female.

8.   **ETHNIC ORIGIN.**   Enter the appropriate code.

## CODE  ETHNIC ORIGIN  DEFINITION

H    Hispanic or    A person of Cuban, Mexican, Puerto Latino Rican, South or Central American,

or other Spanish culture or origin, regardless of race.

O    Not Hispanic    A person who does not meet the or Latino above definition.

9.   **DATE OF BIRTH.**   Ten spaces are provided for the inmate's birth date (MM-DD-YYYY); (e.g., July 2, 1981 = 07-02- 1981). If the inmate's birth date is unknown or not available, enter 01-01-1800.

10.   **OFFENSE/SENTENCE.**   The offense(s), sentence imposed, and docket number (as specified in the Judgment) should be entered in the space provided.   Additionally, if the inmate is admitted to another SENTRY facility, care should be taken to preserve existing information.

11.   **FBI NUMBER.**   Nine spaces are provided for the Federal Bureau of Investigation (FBI) number.   The FBI number can be any combination of letters and numbers and must be entered without

progstat                                    21

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

spaces or dashes.   It cannot duplicate an existing FBI number in SENTRY.     This field must be left blank if the FBI number is unknown at the time the inmate is loaded.

12.     **SOCIAL SECURITY NUMBER (SSN)**.     Nine spaces are provided for the inmate's SSN.   The number must be entered without dashes or spaces.     It cannot duplicate an existing SSN in SENTRY. If the SSN is unknown, or the inmate has never been issued a SSN this field must be left blank.     In cases where the inmate will not be issued a SSN (i.e., illegal aliens) a back slash may be entered.

13.     **STATE OF BIRTH**.     Two spaces are provided for the state code for the state in which the inmate was born.   If entered, it must be a valid code from the State and Possession Code Table in the SENTRY General Use TRM.

14.     **COUNTRY OF BIRTH**.     If entered, it must be a valid code from the Country Code Table in the SENTRY General Use TRM.

**NOTE:**     SENTRY will not allow "US" to be entered if a "state of birth" is entered (Item 13 above).

15.     **CITIZENSHIP**.     Enter the country code that corresponds to the inmate's citizenship.     This must be a valid code from the Country Code Table in the SENTRY General Use TRM.     Do not rely on the inmate's current place of residence to determine citizenship. Special emphasis must be placed on the accuracy of citizenship at the time of the inmate's admission.

16.     **ADDRESS - STREET**.     At least twenty-eight spaces are provided for the inmate's street number and name as listed in the PSR as "legal address." Enter any combination of alphanumeric characters.

17.     **CITY**.     Fifteen spaces are provided for the inmate's city of residence as listed in the PSR as "legal address."     If entered, a state or foreign country must be entered.

18.     **STATE**.     Two spaces are provided for the state code.     If entered, it must be a valid state code found under State Possession Code, SENTRY General Use TRM.     Enter country code under Item 20 if residence is not in the United States or one of its territories or commonwealths.

19.     **ZIP CODE**.     Five spaces are provided for the zip code.     It must be entered when a state code has been entered.     If not available, the city, state, and zip code of the USMS Office assigning the register number will be entered.     An accurate zip

progstat

22

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

code is important because it is used by SENTRY to determine mileage between the inmate's legal residence and designated institution.

20.   **FOREIGN COUNTRY.**   Two spaces are provided for the country code.   If entered, it must be a valid country code from the Country Code Table of the SENTRY General Use TRM.   "US" may not be entered as the country code.   This field must be completed if a state or zip code is not entered in the address field (see Items 18 & 19 above).

21.   **HEIGHT.** Height must be entered in a measurement of feet and inches. Values in feet (FT) must be 1 through 9. Values in inches (IN) must be 00 through 11.

22.   **WEIGHT.**   Weight values must be 001-999 and represent pounds.

23.   **HAIR.**   Two spaces are provided for the color code.   If entered, it must be a valid code found under the Hair Color Code, SENTRY General Use TRM.

24.   **EYES.**   Two spaces are provided for the color code.   If entered, it must be a valid code found under the Eye Color Code, SENTRY General Use TRM.

25.   **ARS ASSIGNMENT.**   Use a valid SENTRY category assignment, SENTRY General Use TRM.


## SECURITY DESIGNATION DATA

The Security Designation Data section (Items 1 to 18) of the Inmate Load and Security Designation form (BP-337) records sentencing, programing recommendations, and background information from the Judgment, the Statement of Reasons (SOR), and the PSR.   This information is used to determine the inmate's security level.

| 1. JUDGE | 2. REC FACILITY | 3. REC PROGRAM | 4. USM OFFICE |
|----------|-----------------|----------------|---------------|

1.   **JUDGE.**   Enter the sentencing Judge's last name.

2.   **RECOMMENDED FACILITY.**   The court may recommend a specific institution or a geographical region for a newly committed

progstat                                         **23**

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

inmate.    Enter  the  name  of  the  recommended  institution  or region.

If a specific SENTRY facility code is entered, that facility will appear at the top of the list presented to the Designator for consideration.

3.    **RECOMMENDED PROGRAM.**    Enter the name or type of any program recommended by the sentencing Judge.

4.    **USM OFFICE.**    Enter the location of the USM Office (e.g., E/VA-NOR).

## 5. VOLUNTARY SURRENDER

5. VOLUNTARY SURRENDER    **0** = NO    **(-3)** = YES

IF YES, MUST INDICATE: 5a. VOLUNTARY SURRENDER DATE: ____

5b. VOLUNTARY SURRENDER LOCATION:

This item allows for the subtraction of three points from the Security Point Total, Item 15, when the Judgment indicates the inmate was allowed to voluntarily surrender.   For purposes of this item, voluntary surrender means the inmate was not escorted by a law enforcement officer to either the U.S.

Marshals Office or the place of confinement.   Additionally, this item applies only to post-sentencing voluntary surrender, and does not include cases where the inmate surrendered to the U.S. Marshals on the same day as sentencing. Voluntary Surrender Credit may only be

applied to the initial term of confinement; it may not be applied to any subsequent Supervised Release, Mandatory Release or parole Violation return to custody.

5a.    **VOLUNTARY SURRENDER DATE.**    If the court has provided for voluntary surrender, enter the date of the voluntary surrender in this block.    If the court provided for voluntary surrender but did not provide a specific date for the surrender, the DSCC will

progstat                        24

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

contact the court to establish a mutually agreeable date.

**NOTE:** In cases where the court allows the inmate to voluntarily surrender but the inmate will not receive

(-3) points on this item the date will still be entered on this item.

5b.   **VOLUNTARY SURRENDER LOCATION.**   The DSCC will note whether the inmate is to voluntarily surrender to the USMS or to the designated institution.

## 6. MONTHS TO RELEASE

6. MONTHS TO RELEASE _____

This item reflects the estimated number of months the inmate is expected to be incarcerated.   Consecutive federal sentences will be added together for classification purposes.   Federal sentences may have different beginning dates, based on the Judgment Order. There may even be a computation in SENTRY with a beginning date in the future.   Based on the inmate's sentence(s), enter the total number of months remaining, less 15% (for sentences over

12 months), and credit for any jail time served. This item is not figured into the security point total but impacts the Sentence Length Public Safety Factor.

**Example:**   An adult convicted of Breaking and Entering under the Sentence Reform Act is sentenced to eight years.   The expected length of incarceration is (96 months x 85% = 81.6 months). Round to the nearest whole number to get 82 and subtract any jail time credit (180 days) = 76 months to release.

**NOTE:**   Enter 540 months for death penalty cases, life sentences, and Parolable life sentences for which a parole date has not been established.

## 7. SEVERITY OF CURRENT OFFENSE

| 7. SEVERITY OF | 0 = LOWEST | 3 = MODERATE | 7 = GREATEST |
| --- | --- | --- | --- |
| CURRENT OFFENSE | 1 = LOW MODERATE | 5 = HIGH | |

progstat                                      25

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Enter the appropriate number of points that reflect the most severe documented instant offense behavior regardless of the conviction offense.   For multiple offenses, the highest score will be used in scoring the current offense.   Staff will consider the offense behavior on all sentences, including federal sentences that have a future beginning date or a previous D.C. or state sentence if there was no physical release from custody.

**NOTE:**   This will require DSCC staff to make reasonable efforts to obtain documentation.

Severity is determined by using the Offense Severity Scale (Appendix A).

**Example:**   According to the PSR, the individual was involved in an Assault With Serious Injury (Greatest severity level) but pled guilty to a Simple Assault (Moderate severity level).   Assign the points on the basis of the more severe documented behavior, i.e., assign 7 points (Greatest severity level).

**In determining "Severity of Current Offense" staff must review the <u>Statement of Reasons</u> (SOR) and ensure the information provided is appropriately used in classifying the inmate.**

**Example:**   According to the PSR the individual was involved in a drug conspiracy responsible for distribution of 31 grams of Cocaine Base "Crack", but was individually only responsible for 2 grams, he/she would be scored as Moderate Severity for this item. However, the SOR, indicates the Sentencing Judge found the individual responsible for less than 1 gram; therefore, the appropriate scoring should be Low Moderate severity.

• **PROCEDURES FOR PAROLE, MANDATORY RELEASE, SPECIAL PAROLE TERM, OR SUPERVISED RELEASE VIOLATORS**

If the violation was the result of new criminal conduct, regardless of conviction status, use the new criminal conduct for scoring "Severity of Current Offense" (see Appendix A). If the violation behavior was a technical violation, score the "Severity of Current Offense" as Low Moderate.

The original offense behavior which occurred prior to the

progstat

26

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

violation is considered past behavior and is not used in determining "Severity of Current Offense."

## • PROCEDURES FOR PROBATION VIOLATORS

The original offense behavior that resulted in probation should be used for scoring "Severity of Current Offense" (see Appendix A).However, if the new criminal conduct (violation

behavior) is more severe than the original offense

behavior, then use this behavior for scoring "Severity of Current

Offense." **The**

**most severe documented behavior between the original offense** and the violation behavior will be used for scoring "Severity of Current Offense."

## 8.   CRIMINAL HISTORY SCORE

| 8. CRIMINAL | 0 = 0-1 | 4 = 4-6 | 8 = 10-12 |
|---|---|---|---|
| HISTORY SCORE | 2 = 2-3 | 6 = 7-9 | 10 = 13 + |

8a. SOURCE OF DOCUMENTED - PRESENTENCE INVESTIGATION REPORT CRIMINAL HISTORY     - NCIC III

Enter the appropriate number of Criminal History Points(CHP). SENTRY will automatically convert the CHP to the Bureau's Criminal History Score (CHS).

The CHS is derived from the US Sentencing Guidelines Criminal History Points, as reflected in the final judgment and the SOR. If not found in either the Judgment or SOR, use the points

progstat                                   27

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

assessed by the USPO in the PSR.

In some cases the Criminal History Points are not available (i.e., when the PSR is waived, on offenses committed prior to November 1, 1987, state cases, and military and D.C. Code offenders).    Under these circumstances the Criminal History Score will be derived from the criminal history documented in the NCIC III Report according to the following procedures:

(a)     Add 3 points for each prior sentence of imprisonment exceeding one year and one month;

(b)    Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a);

(c)    Add 1 point for each prior conviction not counted in

(a)    or (b), up to a total of 4 points for this item; and,

(d)     Add 2 points if the instant offense is a revocation accompanied by a new state or federal conviction, or if the instant offense occurred while under federal supervision including incarceration, probation, parole or supervised release.

The documentation used to assess the Criminal History Points must be provided as specified in all cases.

## 9. HISTORY OF VIOLENCE

| 9. HISTORY OF | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| VIOLENCE | MINOR | 0 | 1 | 1 | 3 | 5 |
| SERIOUS | | 0 | 2 | 4 | 6 | 7 |

Enter the appropriate number of points that reflect any history of violence, considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).    This item includes the individual's entire background of criminal violence, excluding the current term of confinement.

**Exception:**    Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current progstat

28

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

term of confinement will be scored as a history item.   DSCC staff must review the Chronological Disciplinary Record (CDR) for inmates who were previously housed in a federal institution or contract facility.   Any violent act(s) reflected on the CDR must be scored as a history item.   State disciplinary findings must be scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Severity of violence is determined by the offense behavior regardless of the conviction/finding of guilt offense.   History of Violence points combine both seriousness and recency of prior violent incidents to assess the propensity for future violence. Therefore, if there is more than one incident of violence, score the combination of seriousness and recency that yields the highest point score.   Prior periods of incarceration will be considered a "history" item if the inmate was physically released from custody and then returned to serve either a violation or a new sentence. In determining time frames, use the date of the documented behavior.   Documented information from a juvenile, Youth Corrections Act (YCA) or District of Columbia Youth Rehabilitation Act (DCYRA) adjudication can be used unless the record has been expunged or vacated.

Minor History of Violence - Aggressive or intimidating behavior which is not likely to cause serious bodily harm or death (e.g.,

simple assault, fights, domestic disputes, etc.) There must be a finding of guilt.

Serious History of Violence - Aggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.).

There must be a finding of guilt.

**Example:**   If an offender was found guilty of homicide 20 years ago and a simple assault 3 years ago, assign 5 points for the simple assault.   Or in another case, the offender had guilty findings for homicide 12 years ago; aggravated assault 8 years ago; and fighting 2 years ago, score 6 points for the aggravated assault 8 years ago.

**NOTE:**   Attempted suicide, self-mutilation and possession of weapons are not applicable behaviors for History of Violence scoring.   In addition, verbal threats (such as Code 203-Threatening Bodily Harm) are to be viewed as minor violence.

progstat                                      29

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*30 of 33*

## 10.  HISTORY OF ESCAPE OR ATTEMPTS

| 10. HISTORY OF | | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| ESCAPE OR | MINOR | 0 | 1 | 1 | 2 | 3 |
| ATTEMPTS | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) |

Enter the appropriate number of points that reflect the escape history of the individual considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).

Escape history includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, excluding the current term of confinement.

**Exception:**  Any institution disciplinary hearing (UDC or DHO) finding that a prohibited act was committed during the current term of confinement will be scored as a history item. DSCC staff must review the Chronological Disciplinary Record (CDR) for inmates who were previously housed in a federal institution or contract facility.  Any escape(s) or attempt(s) reflected on the CDR must be scored as a history item.  State disciplinary findings are to be scored unless there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Fleeing or Eluding Arrest, Failure to Appear for traffic violations, Absconding, runaways from foster homes and similar behavior should not to be scored under the Escape History item, even if clearly documented, but should be considered on a case-by-case basis under the Management Variable "Greater Security." Failure to Appear or Flight to Avoid Prosecution for any offense however, must be counted when there is a documented finding of guilt.

In determining time frames, use the date of the documented occurrence.  Documented information from a juvenile, YCA, or DCYRA adjudication can be used unless the record has been

progstat

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

expunged or vacated.

Minor History of Escape - An escape from an open institution or program (e.g., minimum security facility, CCC, furlough) not involving any actual or threat of violence.   Also includes military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and Absconding from Community Supervision.   There must be a finding of guilt except as previously noted.

Serious History of Escape - An escape from secure custody with or without threat of violence.   Also includes escapes from an open facility or program with actual threat of violence.   There must be a finding of guilt.   S = 3 points and requires application of PSF L.

## 11. TYPE OF DETAINER

| 11. TYPE OF DETAINER | 0 = NONE | 3 = MODERATE | 7 = GREATEST |
|---|---|---|---|
| | 1 = LOWEST/LOW MODERATE | 5 = HIGH | |

Enter the appropriate number of points that reflect detainer status.   Refer to the Offense Severity Scale, Appendix A. Determination is based on the offense of the most serious detainer.

• If there is a pending charge, points based on the documented behavior are assigned on the "Type of Detainer" item.   If the pending charges or detainer involve a probation violation, use the most severe documented behavior in the original offense as the basis for assigning points in scoring the detainer.

If law enforcement officials indicate a firm intent to lodge a detainer, consider it lodged.   Score a concurrent state sentence as a detainer only if it is expected that the state sentence will exceed the federal sentence.   However, score consecutive state sentences, lodged state detainers, and/or state parole violation terms/warrants as detainers.

• Consecutive federal sentences are ordinarily not lodged as detainers because federal sentences are computed as they are received.   If there is more than one sentence, the most severe

progstat                                        **31**

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

offense will be used as "Severity of Current Offense."

**Example:**   For an individual with two detainers for Violation of Firearms Act (Moderate severity level) and one for Extortion (High severity level), use High = 5 points and enter "5".

• No points will be awarded for U.S. Parole Commission warrants (adjudicated or unadjudicated).   However, the original offense behavior will be factored into the criminal history points and the violation behavior (including new offense behavior) will be scored as

the instant offense.

• No points will be awarded for ICE detainers.   However, each case will be carefully reviewed to determine whether the PSF for Deportable Alien is applicable.


12.

| |
|---|
| |

## AGE

| 12. AGE | 0 = 55 and over | 4 = 25 through 35 |
|---|---|---|
| | 2 = 36 through 54 | 8 = 24 or less |

SENTRY will automatically enter the appropriate number of points based on the inmate's date of birth.   Staff do not have to manually enter an offender's age or points on the BP-337.   If the offenders date of birth is unknown, SENTRY will default to a score of 4 points.


## 13.  EDUCATION LEVEL

13. EDUCATION   **0** = Verified High School Degree or GED

**1** = Enrolled in and making satisfactory progress in GED Program

progstat                                          32

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*33 of 33*

2 = No verified High School Degree/GED and not participating in GED Program

13a. HIGHEST GRADE COMPLETED  ____

Enter the appropriate number of points that reflect the inmate's verified education level at the time of designation.

In addition to the points assigned for the education level, the highest grade completed (HGC) will also be recorded on the BP-

337.   For example, an inmate who began, but did not complete the 7th grade will be given a 6 in the HGC field.   Similarly, a GED

will be given a 12, a college graduate a 16, a Master's degree an 18, and a Ph.D. a 21 (the maximum allowed) in the HGC field.

The value entered for the HGC should, unless missing, be consistent with the points assessed for the inmates education level.   If missing, enter a "U" for unknown.

progstat                                33

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

BP-A0148
JUNE 10

**INMATE REQUEST TO STAFF** CDFRM

U.S. DEPARTMENT OF JUSTICE — FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) AW McCaffery | DATE: May 15th, 2024 |
|---|---|
| FROM: W. Tripp | REGISTER NO.: 24778509 |
| WORK ASSIGNMENT: AM Library | UNIT: G |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request. Medical Treatment. Sir, I've taken the proper steps attempting to receive the treatment that I'm required, filing the proper forms for resolution, remedies, and yet to no avail.

I was to be sent to a medical facility as per the courts recommendation on 8/23/2023. As of now this facility is not equiped to meet the medical issues of stage 3 kidney disease (see medical records). The recommendation from Dr. Richardson, whom personally told me that this facility is not equiped to treat prostrate issues, that I'd have to be sent out. See Dr. Pass report and my response as well to the doctor's. Current cyst on the right side of neck that was determined that it be removed. This facility has left me with this recourse before I continue to pursue a deliberate indifference complaint.

Who is overriding the court recommendation that I be placed at a medical facility and is keeping me at this facility which, you are the warden?

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

PDF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

**SECTION 6**

Response to this cop out Is behind this page

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: APRIL 30, 2024

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      DESIG/SENTENCE COMPUTATION CTR

TO  : WAYNE A TRIPP, 24778-509
      MARION FCI    UNT: 2 GP    QTR: G02-001L
      P.O. BOX 2000
      MARION,  IL 62959

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 1183611-R1      REGIONAL APPEAL
DATE RECEIVED  : APRIL 30, 2024
SUBJECT 1      : CONSULTANT REFERRALS, RECOMMENDATIONS
SUBJECT 2      : TRANSFER FOR MEDICAL REASONS
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,  REGIONAL OFFICE, OR  CENTRAL
                 OFFICE LEVEL.

REMARKS        : PER PS 1330.18 ADMINISTRATIVE REMEDIES MUST FIRST BE
                 FILED AT THE FACILITY TO WHICH YOU ARE ASSIGNED AND
                 APPEALED TO THE REGION.

*Response From A.W. McCaffery.*
*It was!*
*-M Wallace*
*FCI Marion Remedy Clerk*

# — Proposed Law Targets Medical Neglect in Federal Prisons

After his release from federal prison, doctors told Jeffrey Ramirez, 41, that there were no more options for treating his cancer that had been diagnosed—but belatedly treated—while he was still in custody of the federal Bureau of Prisons (BOP). So he passed the time with his teenage daughters and his parents at their home near San Diego until he died on January 16, 2023.

Sadly, Ramirez's death is not uncommon in BOP, where inadequate and delayed medical care is chronic. Over the past decade, at least 4,950 people have died while in federal custody, a quarter of them where Ramirez died at the Federal Medical Center (FMC) in Butner, North Carolina, one of seven medical prisons run by BOP.

Cancer was the leading cause of death in federal lockups between 2009 and 2020. But many prisoners waited months or even years for necessary treatment, despite exhibiting severe symptoms like unexplained bleeding, lumps or intense pain. For those like Ramirez, the delay proved deadly.

In mid-2020, about six months after arriving in BOP custody to serve a 10-year sentence for drug and weapons convictions, Ramirez noticed a BB-sized lump in his testicle. He put in a medical request slip, but it was ignored. Six months later, the testicle had swollen considerably, so he put in another medical request. That scored a visit with a medical staffer, who ordered testing for a hernia. Shortly after that, on February 2, 2021, a nurse practitioner ruled out a hernia and ordered an "urgent" ultrasound of the testicle.

Yet months passed with no ultrasound. Ramirez put in another medical request but was told he already had a pending test. The process repeated itself until an ultrasound scheduled for September 2021 also didn't happen. By that point, Ramirez likened the pain to "getting kicked in the groin." An assistant warden advised him to "trust the process."

In January 2022, when he finally got the ultrasound, he was immediately admitted to a hospital and diagnosed with late-stage testicular cancer that had spread to his brain and lungs. In March 2022, the testicle was removed and he began chemotherapy, at which point Ramirez was transferred to FMC-Butner. According to the federal public defender who represented him, Ramirez's case "just fell through the cracks."

"It seems to be something systemic that's happening in all of the BOP prisons," Zandra Lopez added. "When our clients are requesting help, the internal medical staff recognize that these people need to go out to a specialist. But it goes in this hole. And I don't understand why they're not being seen. And by the time they do, it's oftentimes too late."

BOP claims to meet the same medical standards as independent hospitals at each FMC, though accreditation lapsed in 2021. Meanwhile prisoners, who have a constitutional right to healthcare but no autonomy to access it independently, are dying more often than they should.

Angela Beck, a prisoner in Alabama, waited over eight months for a biopsy after discovering lumps in her breast. By the time she was diagnosed, the cancer had spread.

Michael Derentz experienced repeated delays in care in New Jersey, which contributed to his loss of sight in one eye. He was granted compassionate release in 2022.

Joseph Guadagnoli, a BOP prisoner in West Virginia, complained of various ailments for months and did not receive a cancer diagnosis until it was too late for treatment.

At a BOP lockup in Pennsylvania, Turhan Law suffered nosebleeds for several months before being sent to a hospital. But he wasn't given treatment plans and was eventually granted compassionate release.

Michael Boughner in Colorado experienced severe headaches for weeks and was eventually diagnosed with brain cancer, but the delay was so long that he died.

These cases reflect systemic issues within BOP, where internal medical staff recognized the need for outside specialist care but often delayed or failed to provide it, even when prisoners had troubling symptoms. The consequences included preventable deaths.

Doctors stress the importance of early detection in cancer cases, which can translate into cure rates as high as 98%. However, for prisoners like Ramirez, who receive treatment only when their disease is advanced, it's too late for a cure.

The Office of the Inspector General (OIG) of the federal Department of Justice audited BOP's contract with the University of Massachusetts Chan Medical School, which provides medical services at FMC-Butner. The report highlighted a lack of reliable processes for evaluating quality and timeliness of prisoner healthcare, as well as difficulties in transporting prisoners to off-site appointments due to a shortage of both guards and medical staff. Over 20% of nurse and paramedic positions at FMC-Butner are vacant, leading to delays in care that risk prisoners' health and lives. But despite the vast number of people incarcerated in federal prisons, there is limited independent oversight. Accountability offered by courts and OIG is more often reactive than proactive.

A bill pending in Congress, H.R. 3019, the Federal Prison Oversight Act (FPOA), addresses this gap by requiring regular inspections of prisons and establishing an ombudsman within the Justice Department. Introduced on April 28, 2023, FPOA could bring BOP one step toward better accountability, but systemic staffing shortages and inadequate medical care require comprehensive reform to ensure that federal prisoners receive the care to which they are constitutionally entitled. ◼

Source: *NPR News*

**Are Phone Companies Taking Money from You and Your Loved ones?**

HRDC and PLN are gathering information about the business practices of telephone companies that connect prisoners with their friends and family members on the outside.

Does the phone company at a jail or prison at which you have been incarcerated overcharge by disconnecting calls? Do they charge excessive fees to fund accounts? Do they take money left over in the account if it is not used within a certain period of time?

We want details on the ways in which prison and jail phone companies take money from customers. Please contact us, or have the person whose money was taken contact us, by email or postal mail:

HRDCLEGAL@HUMANRIGHTSDEFENSECENTER.ORG



**Human Rights Defense Center**
Attn: Legal Team
PO Box 1151
Lake Worth Beach, Florida 33460

*Medical # 2472-8509*

*4-25-2024*

*Exhibit    W.A Tripp    At Marion U.S.P*

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 3, 2024

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTH CENTRAL REGIONAL OFFICE

TO  : WAYNE A TRIPP, 24778-509
      MARION FCI    UNT: 2 GP    QTR: G02-001L
      P.O. BOX 2000
      MARION, IL 62959


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1183611-R2        REGIONAL APPEAL
DATE RECEIVED   : JUNE 3, 2024
SUBJECT 1       : CONSULTANT REFERRALS, RECOMMENDATIONS
SUBJECT 2       : TRANSFER FOR MEDICAL REASONS
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS (BP-10)
                 MUST BE RECEIVED WITHIN 20 DAYS OF THE WARDEN/CCM
                 RESPONSE OR RECEIPT OF THE DHO REPORT.  THIS TIME
                 INCLUDES MAIL TIME.

REJECT REASON 2: PROVIDE STAFF VERIFICATION STATING REASON UNTIMELY FILING
                 WAS NOT YOUR FAULT.

REJECT REASON 3: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REMARKS         : WARDEN'S RESPONSE IS DATED 01/11/24.
                  APPEAL WAS DUE 01/31/24.
                  PLEASE RESOLVE ERRORS AND RESUBMIT.



This Is what they told me to do
and I have documented the issues as
I have shared they did nothing!

They Never treated it and I fear it could
return because they didn't treat it "or"
lance it, It Just burst on its Own!!


Signed up For Sick Call — although
this medical Facilitie Knew about the
issues already documented but they
wanted More money because I Kept
Raising the issues about Medical Neglect!

TRULINCS 24778509 - TRIPP, WAYNE A - Unit: MAR-G-A          *To Associatewarden*

---------------------------------------------------------------------------------

FROM: 24778509
TO: AW Office
SUBJECT: ***Request to Staff*** TRIPP, WAYNE, Reg# 24778509, MAR-G-A
DATE: 07/22/2024 07:31:07 AM

To: Tallon
Inmate Work Assignment: Am library

"Sir with All due respect my medical issues that I've shared with Health care administraitor,
administrator, all subordinates, who I have seen in the halls at this facilitiy and shared my agony whom has visually
seen the-"Then-Now" version of my current issue tho still as I share this has gone "Untreated"
with No relief insight.Am I supposed to be Happy while my issues still go without the care that
I've sought since being here.......Sir,"If" I don't tell anyone about my expierience feeling the way
i'm feeling,"Then when" am I too share my issues about the lack of care about the issues I've shared
in a timely manner and have been Overwhelmingly patient about watching the Callouts?waiting to
be told another Time without antibiotics to stop the Spread at least. What else am I to In this
"Die slow process??"

*Photo's of Then until Now taken*
*and Tort Claim Filed and Sent to*
*North Region office bye Certified Mail*
*which I have the reciept*

# Federal Bureau of Prisons
## TRULINCS Account Transactions - Commissary
## Personal Inmate Information

**Inmate No: 24778509    Inmate Name: TRIPP, WAYNE A    Available Balance: $38.04**

| Date | Reference # | Transaction Type | Sender Last name | Amount |
|------|-------------|------------------|------------------|--------|
| 07/23/2024 | ZICP0724 | Inmate Co-pay | | -$2.00 |
| 07/22/2024 | TL0722 | TRUL Withdrawal | | -$5.00 |
| 07/18/2024 | 33324200 | Western Union | TRIPP | $40.00 |
| 07/10/2024 | TL0710 | TRUL Withdrawal | | -$5.00 |
| 07/10/2024 | TL0710 | TRUL Withdrawal | | -$5.00 |
| 07/10/2024 | TL0710 | TRUL Withdrawal | | -$15.00 |
| 07/10/2024 | 3 | Sales | | -$10.60 |
| 07/03/2024 | 7 | Sales | | -$74.55 |
| 07/01/2024 | TL0701 | TRUL Withdrawal | | -$15.00 |
| 06/29/2024 | TL0629 | TRUL Withdrawal | | -$10.00 |
| 06/29/2024 | TL0629 | TRUL Withdrawal | | -$15.00 |
| 06/29/2024 | 33324181 | Western Union | TRIPP | $60.00 |
| 06/28/2024 | TL0628 | TRUL Withdrawal | | -$10.00 |
| 06/28/2024 | TL0628 | TRUL Withdrawal | | -$15.00 |
| 06/28/2024 | 33324180 | Western Union | TRIPP | $120.00 |

**Administrative Remedy-Informal Resolution (BP-8) Attachment**

**Marion, Illinois**

**Correctional Counselors Comments (Steps to Resolve)**

**For inmate TRIPP, Wayne  #24778-509**

**4**.  Inmate has been seen multiple times by Health Services staff since 7-24-2024 for the lump on his neck.  He is also pending general surgery evaluation for removal of the cyst. He had been seen by his provider on 7-2-2024 and his care had not been neglected. He attended sick call on 7-18-24 and 7-23-24 which is what incurred a $2 copay.

To the clerk of the courts.

This medical issue has been Overlooked from its inception I have done Follow up's at the medical facilities, I've spoken directly to Assistant wardens, health Care administraitor Ms. lewis trying to get the proper medical Care before the cyst became engorged and I submitted a Tort claim to the North Region bureau of Prisons with a Photo from the beginning of the cyst Though I'd previously before being transferred to Oklahoma was waiting for the Prison Facilitie photographer to give me the last photo taken of cyst So I Could use as a Exhibit to go along with the First Photo taken though I have witnesses whom would testify to the deliberate indifference shown by the B.O.P medical staff for this issue as well as other issues. See Exhibits and Part of Medical documentations.

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Tripp Wayne A**     **24778509**     **G**     **Marion**
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A- INMATE REQUEST** This is a common cover up for failing to provide health Services to the issues the medical provider has shown a disintrest to treat, "or" Provide at this facilitie. I have submitted Cop-outs to the Assistant Wardens, Tallon that was removed from the B.P.8 As well as Copouts to health administraitor Ms. Kais, The Call out from the date which I have so Copie for exhibit for "deliberate indifference" Wheras the PA1 said on 7.2-2024 (Ms. Barnes) that I wouldn't be Seen and I begged for Antibiotics because of Cyst on Neck that Health Services Knew about see Exhibits then charged Me $200 for Something Known about but left Untreated to this very date that has left Me with my Owly Recourse because this facilitie Is not equipped to treat issues Known.

8-6-2024        *Wayne A Tripp*
DATE                SIGNATURE OF REQUESTER

**Part B- RESPONSE**



       DATE                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**        CASE NUMBER: **120875-F1**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                    CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
                 LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: 35-A _____

       DATE      ♻ PRINTED ON RECYCLED PAPER       RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR                                                      BP-229(13)
                                                     APRIL 1982

RECEIVED
AUG 1 2 2024
BY: ___

*I HAVE exhibits*

Attachment A

## Administrative Remedy - Informal Resolution
## Marion, Illinois

Inmate's Name: _Wayne Tripp_    Reg. No. _24778509_ Unit: _G_ Date: _7-24-2024_

NOTICE:    You are advised that prior to filing a Request for Administrative Remedy [BP-9], you **MUST** attempt to informally resolve your complaint through your counselor. Please follow the three (3) steps listed below.

1.  State your specific complaint: _Neglect of treatment as of 1-24-2024_
_I was Seen by DR DEMATTEI for a Cyst on right Side of Neck Possibly_
_Skin Cancer - THOSE WHOM WERE INFormed DR. PASS, PA Richardson,_
_STALLINGS NURSE Gibbs PA BARNES, HEALTH Administrator Ms. Lewis,_
_Assistant WARden TAllon_

2.  State what efforts you have made to informally resolve your complaint: _I've sent requests to health Care to_
_be Seen and treated because the lesion become painfully enlarged visually and_
_I Spoke with DR. Pass during Chronic Care Visit PA BARNES whom Could have given me_
_antibiotics to EASE Infection but Neglected to do So until Administrator Lewis_
_was Contacted and Assistant Warden Tallon;_

3.  State what resolution you request: _To Get the Medical treatment and Not Neglected_
_where as I've been waiting for Several months for treatment. See attachment_
_I'm in Constant Pain and fear infection has Spreaded throughout_
_my body. Constant headaches Swelling of Joints Coarse saliva, thirsty._
_And Health Services charged $2.00 for me to be Seen/treated For this_ See
Exhibit
    Inmate's Signature: _W. Tripp_    Date: _7-24-2024_

4.  Correctional Counselor's Comments (Steps to Resolve): _See the attached_

Counselor's Signature: _C. Kenney_    Date: _8-5-24_

Unit Manager's Review: _For SB C. Kenney_    Date: _8-5-24_

| | Received by Counselor from inmate | Attempted informal with inmate by Counselor | BP-9 given to inmate | BP-9 Delivered to Admin. Remedy Clerk |
|---|---|---|---|---|
| Date | 7-24-24 | 8-6-24 | 8-6-24 | 8-7-24 |
| Time | 1200p | 100p | 100p | 100p |
| Counselor | Kenney | Kenney | Kenney | Kenney |

| Inmate Name: | TRIPP, WAYNE A | | | Reg #: | 24778-509 |
| Date of Birth: | 10/21/1960 | Sex: | M   Race: BLACK | Facility: | MAR |
| Encounter Date: | 01/24/2024 10:22 | Provider: | Richardson, J. (MOUD) | Unit: | X01 |

Specific reason(s) for request (Complaints and findings):

pain

General Radiology-Hip-2 View AP/Lat          One Time                        01/24/2024        Today
[Right]

Specific reason(s) for request (Complaints and findings):

pain

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Urology | ████ | ████ | Routine | No | |

    Subtype:

      Offsite Urology, NOS

    Reason for Request:

      UROLOGY - Inmate with long standing issue of urinary frequency and incomplete voiding.  On Proscar and prazosin.  Still reports taking 2-3 minutes to initiate urinary stream.

| General Surgery | ████ | ████ | Routine | No | |
|---|---|---|---|---|---|

    Subtype:

      Onsite Eval, NOS

    Reason for Request:

      DR DEMATTEI - Inmate with 2cm rounded lesion to right side of neck.  Inmate reports concern due to family history of skin cancer.

**Disposition:**

Follow-up at Sick Call as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/24/2024 | Counseling | Plan of Care | Richardson, J. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**   No

Completed by Richardson, J. (MOUD) FNP-C on 01/24/2024 10:37

TRULINCS  24778509 - TRIPP, WAYNE A - Unit: MAR-G-A

--------------------------------------------------------------------------------

FROM: 24778509
TO: Health Services
SUBJECT: ***Request to Staff*** TRIPP, WAYNE, Reg# 24778509, MAR-G-A
DATE: 07/19/2024 10:25:34 AM

To: Dr.Pass
Inmate Work Assignment: Am library

Today I spoke with practicioners who assist You /medical regarding my current
issues that  bothers me Visably and painfully as I message this. No medications
Given though You could've but didn't1 I've somewhat Begged for Antibiotics that may
have eased the situation On my neck.Instead I've Gotten the "Die slow" treatment
since being here Under the watch of  I've informed "or" those who've witnessed the
Issuewithout any treatment,medication given. I am going to keep a copie Of this
just wanted to share about my issues have worsened being at this facilitie which isn't
equipped to treat. respectfully #24778509

# Proposed Law Targets Medical Neglect in Federal Prisons

After his release from federal prison, doctors told Jeffrey Ramirez, 41, that there were no more options for treating his cancer that had been diagnosed—but belatedly treated—while he was still in custody of the federal Bureau of Prisons (BOP). So he passed the time with his teenage daughters and his parents at their home near San Diego until he died on January 16, 2023.

Sadly, Ramirez's death is not uncommon in BOP, where inadequate and delayed medical care is chronic. Over the past decade, at least 4,950 people have died while in federal custody, a quarter of them where Ramirez died at the Federal Medical Center (FMC) in Butner, North Carolina, one of seven medical prisons run by BOP.

Cancer was the leading cause of death in federal lockups between 2009 and 2020. But many prisoners waited months or even years for necessary treatment, despite exhibiting severe symptoms like unexplained bleeding, lumps or intense pain. For those like Ramirez, the delay proved deadly.

In mid-2020, about six months after arriving in BOP custody to serve a 10-year sentence for drug and weapons convictions, Ramirez noticed a BB-sized lump in his testicle. He put in a medical request slip, but it was ignored. Six months later, the testicle had swollen considerably, so he put in another medical request. That scored a visit with a medical staffer, who ordered testing for a hernia. Shortly after that, on February 2, 2021, a nurse practitioner ruled out a hernia and ordered an "urgent" ultrasound of the testicle.

Yet months passed with no ultrasound. Ramirez put in another medical request but was told he already had a pending test. The process repeated itself until an ultrasound scheduled for September 2021 also didn't happen. By that point, Ramirez likened the pain to "getting kicked in the groin." An assistant warden advised him to "trust the process."

In January 2022, when he finally got the ultrasound, he was immediately admitted to a hospital and diagnosed with late-stage testicular cancer that had spread to his brain and lungs. In March 2022, the testicle was removed and he began chemotherapy, at which point Ramirez was transferred to FMC-Butner. According to the federal public defender who represented him, Ramirez's case "just fell through the cracks."

"It seems to be something systemic that's happening in all of the BOP prisons," Zandra Lopez added. "When our clients are requesting help, the internal medical staff recognize that these people need to go out to a specialist. But it goes in this hole. And I don't understand why they're not being seen. And by the time they do, it's oftentimes too late."

BOP claims to meet the same medical standards as independent hospitals at each FMC, though accreditation lapsed in 2021. Meanwhile prisoners, who have a constitutional right to healthcare but no autonomy to access it independently, are dying more often than they should.

Angela Beck, a prisoner in Alabama, waited over eight months for a biopsy after discovering lumps in her breast. By the time she was diagnosed, the cancer had spread.

Michael Derentz experienced repeated delays in care in New Jersey, which contributed to his loss of sight in one eye. He was granted compassionate release in 2022.

Joseph Guadagnoli, a BOP prisoner in West Virginia, complained of various ailments for months and did not receive a cancer diagnosis until it was too late for treatment.

At a BOP lockup in Pennsylvania, Turhan Law suffered nosebleeds for several months before being sent to a hospital. But he wasn't given treatment plans and was eventually granted compassionate release.

Michael Boughner in Colorado experienced severe headaches for weeks and was eventually diagnosed with brain cancer, but the delay was so long that he died.

These cases reflect systemic issues within BOP, where internal medical staff recognized the need for outside specialist care but often delayed or failed to provide it, even when prisoners had troubling symptoms. The consequences included preventable deaths.

Doctors stress the importance of early detection in cancer cases, which can translate into cure rates as high as 98%. However, for prisoners like Ramirez, who receive treatment only when their disease is advanced, it's too late for a cure.

The Office of the Inspector General (OIG) of the federal Department of Justice audited BOP's contract with the University of Massachusetts Chan Medical School, which provides medical services at FMC-Butner. The report highlighted a lack of reliable processes for evaluating quality and timeliness of prisoner healthcare, as well as difficulties in transporting prisoners to off-site appointments due to a shortage of both guards and medical staff.

Over 20% of nurse and paramedic positions at FMC-Butner are vacant, leading to delays in care that risk prisoners' health and lives. But despite the vast number of people incarcerated in federal prisons, there is limited independent oversight. Accountability offered by courts and OIG is more often reactive than proactive.

A bill pending in Congress, H.R. 3019, the Federal Prison Oversight Act (FPOA), addresses this gap by requiring regular inspections of prisons and establishing an ombudsman within the Justice Department. Introduced on April 28, 2023, FPOA could bring BOP one step toward better accountability, but systemic staffing shortages and inadequate medical care require comprehensive reform to ensure that federal prisoners receive the care to which they are constitutionally entitled. ∎

Source: *NPR News*

**Are Phone Companies Taking Money from You and Your Loved ones?**

HRDC and PLN are gathering information about the business practices of telephone companies that connect prisoners with their friends and family members on the outside.

Does the phone company at a jail or prison at which you have been incarcerated overcharge by disconnecting calls? Do they charge excessive fees to fund accounts? Do they take money left over in the account if it is not used within a certain period of time?

We want details on the ways in which prison and jail phone companies take money from customers. Please contact us, or have the person whose money was taken contact us, by email or postal mail:

HRDCLEGAL@HUMANRIGHTSDEFENSECENTER.ORG



**Human Rights Defense Center**
Attn: Legal Team
PO Box 1151
Lake Worth Beach, Florida 33460

*Medical # 2432-8509   4-25-2024*

*Exhibit   W.A. Tripp at Marion U.S.P*

TRIPP # 24778509

July 18th 2024

I Just left Sick Call at this facilitie whereas I spoke with Nurse (male) hughes.- Ms. Gibbs, about Cyst that has become enlarged Since the reported inception. I have a host of medical issues, that Cortisone Cream "or" Tylenol "or" Tamsolin for Urination Can't fixed. This medical System here Sucks! my Only recourse after this "if" I'm not dead to Get the Message to my family members and bring these issues to the Courts which I'm Preparing to do because I'm in dire need of treatment and In Constant Pain.
    *A "Classic Case" of
        deliberate in difference.
I will display exhibits in Bivens Complaint

FCI Milan has found a perfect solution to its many unaddressed operational problems. Although the DOJ's Office of Inspector General found that there were serious, life-threatening deficiencies problems in its medical department, resulting in poor medical treatment of sick and injured prisoners (https://oig.justice.gov/reports/remote-inspection-federal-correctional-institution-milan), it declined to address those problems, but instead it decided to once again censor this publication. We

*...ses we have seen in which*
*...served (30 years!) via a*
*...full read, includes these*

*...ces in U.S.S.G.§ IBI.13,*
*...use of the aging process*
*...years in prison....*
*...omplished during the 30*
*...ding Mr. Cantu-Rivera's*
*...iceship with the*
*...ervice as a teaching*

**BOMBSWell!**
**Poor Medical**

Department of Labor. The extraordinary degree of ... assistant in several prison facilities for high-school equivalency and English-as-a- Second-Language programs and his service in the BOP's suicide watch program, helping to care for inmates placed in solitary confinement due to suicide attempts. Finally, the Court recognizes as a factor in this combination the fundamental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions. § 401(a)(2)(A)(ii), 132 Stat. at 5220 (codified at 21 U.S.C. § 841(b)(1)(A)). The combination of all of these factors establishes the extraordinary and compelling reasons justifying the reduction in sentence in this case.

COMMENT:
We are working on more information on the latest huge rulings in United States v. Davis and Rehaif. Of most serious interest is that the Court did not rule that Davis is retroactive for 28 USC § 2255 post-conviction collateral attack purposes because that question was not before it. However, the Supreme Court never rules on retroactivity in the same opinion that holds a statute unconstitutional, but there is little doubt that, if Johnson was retroactive because of Welch, Davis will be held to be retroactive as well and Rehaif should also be retroactive. The Davis case will also have a big bearing for all of the cases held in abeyance such as United States v. Simms, 914 F.3d 229, 233 (4th Cir. 2019) (en banc); the 10th Circuit case in United States v. Salas; and the D.C. Circuit case in United States v. Eshetu. We have several cases pending that have been held in abeyance pending the decision in Davis. They should now be favorably decided. Anyone with a §§ 924(c) or 922(g) case should request a Free Look Up to see if they may gain relief.

FOR FREE QUICK LOOKS FOR ALL KINDS OF FEDERAL CRIMINAL CASES INCLUDING § 922(g) AND 924(c)(3)(B) CASES, PLEASE SUBMIT THE FOLLOWING:
(1) FULL NAME & REG. NUMBER; (2) WHERE YOU WENT TO COURT (City & State); and (2) OUTSIDE CONTACT'S INFORMATION (Name, Telephone Number and they must know why we are calling). WE HANDLE ALL KINDS OF FEDERAL CRIMINAL CASES FROM PRE-INDICTMENT TO POST CONVICTION. WE HAVE A HIGH SUCCESS RATE.
Outside Contacts please call 800-401-3290. please make sure they have your information for above. They can also email: Mimi Harper [mhalert1759@gmail.com]; Julia Sims [juliasimsalert@gmail.com]; or Kane Adams [kanealert11@gmail.com] for English; and Carina Garcia [carina.garcia2@yahoo.com] for Spanish.

...g.y, I would
OTHER NEWS
District Court Finds Statutory Sentence Reform among "Extraordinary and Compelling Reasons" for Reducing Lwop Sentence under 18 U.S.C. § 3582(c)(1)(A) --
Ever since the passage of the FIRST STEP Act, we have been advocating 18 U.S.C. § 3582(c)(1)(A) as a critical and valuable new mechanism to reduce problematic prison sentences in any and every case in which the defendant presents "extraordinary and compelling reasons" for the reductions. Though to date it seems this imprisonment-reduction authority granted by 3582(c)(1)(A) has been used almost only for so-called compassionate release situations in which a prisoner was extremely ill or had an extreme family situation. A recent example of a judge finding other reasons sufficient to reduce a sentence and making clear that the new FIRST STEP Act allows a judge broad authority to "determine whether any extraordinary and compelling reasons" justified a reduction in a prison term. See United States v. Cantu, (No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019). Another US District Court judge was issuing another important § 3582(c)(1)(A) ruling in United States v. Cantu-Rivera, (Cr. No. H-89-204) (SD Tex June 24, 2019). This case was authored by Judge Sim

*...ions in prison."*

last Friday, 19,000 BOP staff (51.5%) and 75,150 inmates (49.2%) have been vaccinated. Eighty-five inmates and 130 ...n 68 facilities) have COVID, with 253 federal prisoners dead.

**U.S. Department of Justice**
**Federal Bureau of Prisons**

**Administrative Remedy**
**Part B - Response**

**Administrative Remedy Number**: 1208875-F1

This is in response to your Administrative Remedy receipted August 12, 2024, wherein you are requesting treatment of a neck cyst.

On January 26, 2024, you were seen by the Clinical Director who referred you to General Surgery for consideration of removing the cyst on the right anterior neck, likely a sebaceous cyst based on appearance. On March 14, 2024, you were seen by a General Surgeon who indicated the plan is to excise the cyst.

On July 2, 2024, you were seen by the PA, but did not indicate any concerns regarding the cyst. On July 18, 2024, you attended sick call due to the cyst becoming more painful in the last 3 weeks. On July 22, 2024, you were seen by your provider in response to the sick call request and placed on Doxycycline antibiotics. Once the cyst began to drain, on July 24, 25, 28, and 29th you received wound care dressing changes in which the area was cleansed with Hibiclens and covered with gauze. Throughout the dressing changes, the size of the area decreased. On July 30, 2024, you were seen for a follow up with the PA in which it is noted that the drainage had stopped. On August 12, 2024, additional antibiotics were ordered. You are scheduled to see the General Surgeon for removal of the cyst.

Accordingly, your Request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_8/13/24_
Date

D. Sproul, Warden

BP 10's and associated
documents

BP 11's

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: AUGUST 19, 2024

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : WAYNE A TRIPP, 24778-509
      MARION FCI    UNT: 2 GP    QTR: ~~G02-001D~~  D01- ~~107L~~ 103L
      P.O. BOX 2000
      MARION, IL 62959

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 1183611-A1    CENTRAL OFFICE APPEAL
DATE RECEIVED   : JULY 29, 2024
SUBJECT 1       : CONSULTANT REFERRALS, RECOMMENDATIONS
SUBJECT 2       : TRANSFER FOR MEDICAL REASONS
INCIDENT RPT NO:

REJECT REASON 1: CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR INSTITUTION
                 FOR REJECTION. **FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                 NOTICES.**

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: APRIL 30, 2024


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      DESIG/SENTENCE COMPUTATION CTR

TO  : WAYNE A TRIPP, 24778-509
      MARION FCI     UNT: 2 GP     QTR: G02-001L
      P.O. BOX 2000
      MARION,  IL 62959


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1183611-R1       REGIONAL APPEAL
DATE RECEIVED   : APRIL 30, 2024
SUBJECT 1       : CONSULTANT REFERRALS, RECOMMENDATIONS
SUBJECT 2       : TRANSFER FOR MEDICAL REASONS
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,   REGIONAL OFFICE, OR  CENTRAL
                 OFFICE LEVEL.

REMARKS         : PER PS 1330.18 ADMINISTRATIVE REMEDIES MUST FIRST BE
                  FILED AT THE FACILITY TO WHICH YOU ARE ASSIGNED AND
                  APPEALED TO THE REGION.

**U.S. DEPARTMENT OI    STICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | TRIPP WAYNE A | 2477-8509 | G | MARION |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

See Court documentation attached and See my medical Problems and documentation and hi-lighted responses and Current Information recorded on detainees like myself not being Placed at the facility Wheras my medical issues can, will be treated. And not Overlooked. I'm asking to be transfered A.S.A.P. See documented requests for the record

| 5-14-2024 | WAYNE A. Tripp #2477-8509 |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

( 1183611 - F1

\* This was already filed at institution level. You Should have included response in your BP-10 to region.

\* You also Submitted the BP-10 on a BP-11 form to Region.

RECEIVED
BY: MW

| | WARDEN OR REGIONAL DIRECTOR |
|---|---|
| DATE | |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

CASE NUMBER: 1183611-

**Part C- RECEIPT**

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| | RECIPIENT'S SIGNATURE (STAFF MEMBER) | |
|---|---|---|
| DATE | | |

FPI-PEPR            PRINTED ON RECYCLED PAPER                    BP-2
                                                                APF

**Regional Administrative Remedy Appeal**

U.S. Depart___t of Justice

Federal Bureau of Prisons

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _Tripp, Wayne A_  _24778509_  _GB1_  _Marion_
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**   See Previous filings of BP-8, BP-9,
Once again This appeal with documentation of medical
records that were submitted and Kept from Your office.
I am hearby requesting the immediate intervention of Your
department designating, Orchestrating a medical transfer
A.S.A.P to an actual B.O.P. Medical facility (Springfield, MO) as
Is both needed, and recommended by the Sentencing Judge. (See Transcripts)
Futhermore, I Proffer In Support of this appeal. The relevant
B.O.P. Medical Records that verify my medical Condition, to include the recent
discovery of A possible Malignacy attached to my neck. In Short I need
Actual ongoing medical attention that U.S.P Marion simply is not
equipped to administer    Wayne A. Tripp 24778509

_5-28-2024_
DATE                                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
JUN U 3 2024
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

_____        _____
DATE                   REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: __1183611-R2__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____        _____
DATE                   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

FPI-PEPR            PRINTED ON RECYCLED PAPER            BP-230(13)
                                                        JUNE 2002

TO the clerk of the U.S. District Courts. I am asking that the Court take Judicial Notice I am not an attorney nor do I have the finances at this time to hire any. I am asking the U.S. Courts to intervene on my behalf to get the relief that the B.O.P has disregarded and to point out In their B.O.P Policies has documented that the bureau follows the recommendations from the Courts.

I WAS Feverishly Filing appeals and Using all the steps attempting to get the medical attention that I Filed BP 8's / BP 9's / BP 10's / BP 11's As documented by dates this facilitie Refused to treat me. The Only reason Medical finally gave me 10 days of Antibiotics was because the Cyst burst On it Own without medical treating it "OR" lancing it to See what it WAS?

Campus 4
Sensitive

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

REC'D APR 3 0 2024

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **TRIPP, WAYNE A**     **24777-8509**     **G**     **MARION**

      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

This Appeal Is Just that.... A Formal Appeal. I am hearby requesting the Immediate intervention of Your department designating, and Orchestrating my A.S.A.P. transfer to An Actual B.O.P. Medical facility (Springfield, MO) As is both needed, And Recommended by the Sentencing Judge. (See Transcripts) Futhermore, I Proffer In Support of this Appeal, The Relevant B.O.P. Medical Records that verify my Condition, to Include the recent discovery of A Possible Malignacy attached to my Neck. In Short, I need Actual, On-going, Medical attention that U.S.P. Marion Simply is not equipped to administer.

4-22-2024                       _Wayne A. Tripp_

    DATE                                     SIGNATURE OF REQUESTER

**Part B - RESPONSE**

 

 

 

 

DATE                                      GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE             CASE NUMBER: _____

**Part C - RECEIPT**

                                     CASE NUMBER: _____

Return to: _____

      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

    DATE                     SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

PRINTED ON RECYCLED PAPER

BP-231(13)

JUNE 2002

UPN LVN

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **TRIPP   WAYNE   A**      **24778509**      **GB1**      **MARION**
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL**            *See Transcripts 8-23-2023*

I am requesting the immediate intervention of Your department.
See enclosed documentation of the Sentencing Courts
recommendation (courts) that I be placed at medical facilitie within 500 miles
from Kansas City Missouri. An Actual B.O.P. Medical facility as is both
Needed and recommeded. I Proffer In Support of this Appeal Relevant
B.O.P. Medical records that verify my Condition to include the recent discovery
of A Possible Malignacy attached to my Neck that has Grown and Painfully
its been disregarded at this facilitie. I need Actual On Going Medical attention that
This U.S.P-FCI Is not equipped to administer.

**July 18, 2024**            **Wayne A. Tripp  24778509**
      DATE            SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
JUL 29 2024
Administrative Remedies
Federal Bureau of Prisons

---

_____            _____
DATE                  GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE      CASE NUMBER: **118361**

**Part C - RECEIPT**

                  CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____                  _____
DATE            SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN            PRINTED ON RECYCLED PAPER            BP-231(13)
                              JUNE 2002



Wayne A Tripp #24778-509
Milan Federal Correctional Institution
P.O. Box #1000
Milan, Michigan. 48160

9589 0710 5270 1221 1010 78

Attention: Clerk of United States district courts
United States district court
231 West. Lafayette Blvd
5th floor
Detroit, Michigan
48226
U.S.

RECEIVED
MAR - 4 2025
CLERKS OFFICE
DETROIT

U.S. POSTAGE PAID
PM
MILAN, MI 48160
FEB 27, 2025
$0.00
48226
S2324P505163-48
RDC 03
Retail